[Civ. No. 3021. Fifth Dist. Sept. 27, 1976.]

THE PEOPLE, Petitioner, v.
COUNTY OF KERN et al., Respondents;
L. G. KENDALL et al., Real Parties in Interest.

[Civ. No. 2964. Fifth Dist. Sept. 27, 1976.]

THE PEOPLE, Plaintiff and Appellant, v.
COUNTY OF KERN, Defendant and Respondent;
L. G. KENDALL et al., Real Parties in Interest and Respondents.

COUNSEL

Evelle J. Younger, Attorney General, and Larry C. King, Deputy Attorney General, for Petitioner and for Plaintiff and Appellant.

Ralph B. Jordan, County Counsel, D. N. Reid, Assistant County Counsel, for Respondents and for Defendant and Respondent.

Sims & Solomon and Gabriel W. Solomon for Real Parties in Interest and Respondents.

OPINION

FRANSON, J.—

STATEMENT OF THE CASE

In June 1974 this court issued a writ of mandate directing the trial court to issue a preliminary injunction enjoining respondent county from issuing to L. G. Kendall and Eastco, Inc., (Eastco) any building permits or other "entitlements of use" for the construction of Rancho El Contento subdivision and ordering Eastco to refrain from taking any further action pursuant to any permit or other entitlements theretofore issued or approved by the county with respect to the construction of the project. The writ was issued because Kern County had failed to respond with specificity in the final environmental impact report to the comments and objections to the 1973 draft environmental impact report as required by section 15146 of title 14 of the California Administrative Code. (See *People* v. *County of Kern* (1974) 39 Cal.App.3d 830, 841 [115 Cal.Rptr. 67].)

Fourteen months later, on August 19, 1975, Eastco requested the board of supervisors to comply with the law by preparing specific responses to the comments to the draft environmental impact report.[1] It also requested an early hearing on its appeal from the Kern County Surveyor's decision that an EIR is required before Eastco can secure approval of a 20-acre parcel map land division (Parcel Map No. 3144)

[1]The record furnishes no explanation as to why Eastco waited 14 months before seeking the board's compliance with our decision in *People* v. *County of Kern, supra.*

which was proposed as an alternative to the development of the Rancho El Contento subdivision.

On November 7, 1975, the Kern County Public Works Director and County Surveyor submitted a report and an initial study to the board of supervisors regarding Eastco's proposed new project, Parcel Map No. 3144, finding that this project may have a significant environmental impact necessitating an environmental impact report.

On November 26, 1975, Eastco again requested that the board of supervisors comply with the law by making the required response and also approving Parcel Map No. 3144 based on the 1973 draft EIR and all comments thereon without requiring an additional EIR.

On December 2, 1975, Attorney Gabriel Solomon appeared before the board of supervisors and proposed a resolution for adoption by the board approving development of tentative Tract Nos. 3590 and 3591 and Parcel Map No. 3144. The proposed resolution was drafted by Mr. Solomon and contained what Mr. Solomon asserted to be an adequate response to the environmental criticisms contained in the draft 1973 EIR. The board referred the proposed resolution to the county counsel for his review and advice as to the legality of the resolution and the board's endorsement thereof.

On December 9, 1975, the board of supervisors, after noting that the county counsel had expressed serious reservations about the proposed resolution "as a method of resolving the deficiencies in county's past processing of Tract Maps Nos. 3590-3591 or as the basis for now processing Parcel Map No. 3144 without an EIR" nonetheless adopted resolution No. 75-585 whereby the board stated its desire to adopt a resolution substantially in accord with Eastco's proposed resolution if the preliminary injunction issued pursuant to the writ of mandate be vacated.

On December 18, 1975, Eastco moved the superior court to vacate the preliminary injunction asserting that the proposed resolution of the board of supervisors fully complied with all legal requirements including those set forth in *People* v. *County of Kern, supra.*

On December 19, 1975, Eastco moved for leave to file a cross-complaint against the State of California for inverse condemnation or for rescission and restitution if the motion for a vacation of the preliminary injunction be denied.

On January 27, 1976, the superior court ordered the preliminary injunction dissolved effective on the board of supervisor's adoption of the resolution included in resolution No. 75-585. On February 24, 1976, after notice to all interested parties, the board adopted the proposed Eastco resolution by resolution No. 76-119. (A copy of said resolution is attached hereto as an Appendix, p. 779.)

The Attorney General has filed a timely notice of appeal from the trial court's order dissolving the preliminary injunction and on May 19, 1976, petitioned this court for issuance of a writ of mandate or in the alternative a writ of supersedeas and applied for a temporary stay pending a hearing on the merits of the petition.

On June 3, 1976, this court granted the petition for supersedeas directing Kern County Superior Court to vacate its order dissolving the preliminary injunction in action No. 125725 and to issue a preliminary injunction, pending further action by this court, enjoining Kern County from issuing to Eastco any building permits or other entitlements for construction of the projects proposed in Tract Maps Nos. 3590 and 3591 and Parcel Map No. 3144, and ordering Eastco, Inc. and L. G. Kendall to refrain from taking any further action pursuant to any permits or other entitlements heretofore issued or approved by Kern County with respect to the construction or development of the proposed projects. An order to show cause why mandamus should not be granted also was issued on June 3, 1976.

We have consolidated for determination in one proceeding the appeal from the order vacating the preliminary injunction and the petition for writ of mandate and/or supersedeas.

## Statement of the Facts

Prior to the decision in *People* v. *County of Kern, supra,* the following actions had occurred with regard to the proposed development.

In September 1971 Eastco acquired title to the subject 275 acres for development of a mountain subdivision called Rancho El Contento. The property was zoned "A-1" (Light Agricultural). On May 15, 1972, tentative subdivision maps for Tract Nos. 3590 and 3591 were approved subject, among other conditions, to the adoption of a specific plan for the development of Cuddy Valley and to Eastco's obtaining a zone change of

the property from A-1 to E-1 and E-3 "Estate" zones, in order to establish a larger minimum lot size to control population density, as required under the county ordinances for mountain subdivisions. Thereafter, Eastco submitted a specific plan for the development of Cuddy Valley and applied to the county for rezoning to conform with the tentative maps. A specific plan was approved by the planning commission on September 5, 1972, and adopted by the board of supervisors on October 17, 1972. The plan called for minimum lot sizes of 14,000 square feet, and the board's approval expressly provided that "amendments to the zoning ordinance applicable to the area shall conform to this specific plan" in accordance with the tentative maps on file.

On April 17, 1973, the county ordered Eastco to file an EIR in connection with its application for rezoning. About May 8, 1973, a nine-page draft EIR prepared on behalf of Eastco by French & Associates, civil engineers, was filed with the county planning department. The draft EIR generally complied with the CEQA and its guidelines for such reports. Subsequently, the county prepared a four-page addendum to the draft EIR which listed the adverse environmental effects "which cannot be avoided if the proposal is implemented." The report was circulated to interested public agencies and private groups. (See Pub. Resources Code, §§ 21104, 21105; Cal. Admin. Code, tit. 14, §§ 15085, 15160 et seq.)

Numerous comments and extensive criticism of the draft EIR and the county's addendum were received by the county. These comments, besides challenging the accuracy of certain aspects of the report, raised serious questions regarding the lack of water and the inadequacy of current data to determine the effect of the development on the existing water supply, potential ground water pollution from septic tanks on the individual lots, inadequate geological surveys and the fact that the development site is directly over the San Andreas Fault and is adjacent to several other faults, the inadequacy of current electrical facilities, the inadequacy of the only road leading to the valley, safety hazards in case of fire, erosion of the soil, air pollution damage to the trees, the historical and archeological value of the area, overpopulation, adverse effects on the surrounding youth camps and the combined effects of the development with other anticipated developments in the area.

Upon receiving these comments the planning department prepared a five-page addendum to the draft EIR. It also prepared a two-page "environmental impact summary" which merely contained one para-

graph statements of the major impacts on population, water supply, sewage disposal, air pollution, geologic hazard, wildlife and access circulation. On October 1, 1973, the board of supervisors ordered the two-page summary to be made a part of the final EIR. The final EIR also had attached to it the comments and objections of the various public agencies and private groups which had considered the draft EIR. Neither the planning department's five-page addendum nor the two-page summary contained a response by the county to the significant environmental issues raised, nor did they address in any detail the reasons why the specific comments and objections received from the interested agencies and private groups were not accepted, and why the board apparently concluded that the value of the development warranted an override of the environmental objections.

On October 1, 1973, members of the public appeared before the board. They presented additional comments and objections and pointed out that the EIR did not respond to their comments and objections as required by law. Nevertheless, the board approved the final EIR and adopted an ordinance granting Eastco the zoning change. On October 3, 1973, the county filed a notice of approval of the project as required by Public Resources Code section 21152. The county issued a grading permit which permitted Eastco to grade the land and remove trees. By affidavit, Eastco states that since it purchased the property in 1971 and up to the filing of the superior court action on November 2, 1973, it had expended in excess of $45,000 for architectural and engineering costs and fees, and other expenses incurred in connection with the development of the property.

*People* v. *County of Kern, supra,* followed the above events.

## Discussion

We are not unsympathetic to Eastco and Kendall's position in this matter; they have attempted since 1971 to obtain proper zoning for the commercial development of Tract Nos. 3590 and 3591 in Cuddy Valley and have expended substantial sums by way of architectural, engineering, and attorneys' fees and other expenses in their efforts to obtain the required zoning. Unfortunately, however, the respondent County of Kern again has failed to comply with the mandatory provisions of the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.) and the administrative regulations (guidelines)

(Cal. Admin. Code, tit. 14, § 15000 et seq.) as interpreted by this court in *People* v. *County of Kern, supra.* Accordingly, we have no alternative but to reverse the superior court's order vacating the preliminary injunction and to issue a writ of mandate directing the respondent County of Kern through its board of supervisors to set aside resolution No. 76-119 adopted February 24, 1976, for failure of said board to proceed in a manner required by law.[2]

Resolution No. 76-119 is defective because of its failure to adequately respond to the adverse environmental comments set forth in the draft 1973 EIR. It does not contain a ". . . good faith, reasoned analysis in response" to the various comments and criticisms raised by interested parties. (See *People* v. *County of Kern, supra,* 39 Cal.App.3d at pp. 841-842.)

Section 15146, subdivision (b), of the guidelines states: "The response of the Lead Agency to comments received may take the form of a revision of the Draft EIR or may be an attachment to the Draft EIR. The response shall describe the disposition of significant environmental issues raised (e.g., revisions to the proposed project to mitigate anticipated impacts or objections). In particular the major issues raised when the Lead Agency's position is at variance with recommendations and objections raised in the comments *must be addressed in detail giving reasons why specific comments and suggestions were not accepted, and factors of overriding importance warranting an override of the suggestions.*" (Italics added.) Moreover, " '. . . the requirement of a detailed statement helps insure the integrity of the process of decision by precluding stubborn problems or serious criticism from being swept under the rug. A conclusionary statement "unsupported by empirical or experimental data, scientific authorities, or explanatory information of any kind" not only fails to crystalize issues [citation] but "affords no basis for a comparison of the problems involved with the proposed project and the difficulties involved in the alternatives." ' " (*People* v. *County of Kern, supra,* 39 Cal.App.3d at pp. 841-842.)

[2]Public Resources Code section 21168.5 limits judicial inquiry in an action challenging a decision of a public agency because of noncompliance with CEQA to whether a prejudicial abuse of discretion has occurred. Such an abuse is established if the public agency has not proceeded in a manner required by law.

The comments and criticisms contained in the 1973 draft EIR raised serious questions regarding the unavailability of water and the inadequacy of current data to determine the effect of the development on the future water supply, potential ground water pollution, inadequate geological surveys and the fact that the development site is directly on the San Andreas Fault and adjacent to several other faults, the inadequacy of current electrical facilities, the inadequacy of the only road leading to the valley, safety hazards in case of fire, erosion of the soil, air pollution damage to the trees, the historical and archeological value of the area, overpopulation, adverse effects on the surrounding youth camps, and the combined effect of the development with other anticipated developments in the area. (*People* v. *County of Kern, supra,* 39 Cal.App.3d at p. 836.)

Although resolution No. 76-119 touches lightly upon the ground water problems, condors, deer and native vegetation, fire hazards, soil erosion risk, damage to the historical and archeological value of the area, overpopulation, adverse effects on the youth camps, earthquake risk, traffic and air pollution, it totally fails to respond to the comments concerning potential ground water pollution and the inadequacy of current electrical facilities. Most importantly, it does not respond to the claimed inadequacy of current data to determine the effect of the development on the ground water supply.

In 1973 the Kern County Health Department, U. S. Forest Service, and Kern County Public Works Department made it clear that the proposed high density development of 356 new dwellings on Tract Nos. 3590 and 3591 would require the commitment of significant amounts of underground water which could adversely effect other water users in the Cuddy Valley area; that absent ground water studies it is impossible to assess the development upon the ground water reserves in the valley. The board's February 24, 1976, response to these comments is as follows: "For many years prior to and including 1971 the subject property was being commercially exploited and used as a combination turkey and grain farm. The property consists of 285 acres located in Cuddy Valley. The board is informed that approximately 100,000 turkeys were annually raised and housed upon this land. Various buildings and structures existed on the land for the housing of the turkeys and the farm operators. Prior to 1971 a natural spring and two water wheels existed on the land. These sources fully supplied very substantial water requirements of the farm and turkeys. In 1971 a third water well was drilled on the land to

supplement one of the existing wells which was in poor condition. These three water wells are still in existence. *All available data* indicates that underground water available from these three wells is fully adequate to supply all projected water needs of the residents who would reside upon the property if Eastco is allowed to develop the property in accordance with its tract maps numbered 3590 and 3591. *The board deems it highly pertinent to note that the owners of the subject property have a perfect legal right to pump as much underground water via these three wells as they may desire regardless of whether the property is developed pursuant to map 3590 and 3591 or whether the property is reverted to commercial exploitation as a combination turkey and grain farm.* Thus, there is no assurance nor probability that reduction of underground water usage would be accomplished by refusing to approve any of Eastco's alternative development plans. This consideration is deemed by this board to be a specific and rather decisive answer to the questions raised by some sources as to the underground water resources within the Cuddy Valley." (Italics added.)

The board's reference to "all available data" indicating that the water supply from the three wells is adequate to supply all projected water needs if Eastco is allowed to develop the property cannot be considered an adequate response to the environmental criticism. First the board has failed to identify in any manner the data available to it upon which it reaches its conclusion that the water supply is adequate for the projected needs of the high density development. This becomes particularly important in view of the public agencies' statements that underground water studies are needed to evaluate the project. At the very minimum the board should have ascertained the productive capacity of the three wells on the property and should have evaluated their capacity with the anticipated needs of the project. It also should have considered the level of the underground water tables at the present time in comparison with the level of the water tables in 1971. The fact that owners prior to 1971 were able to raise turkeys on the property is no proof that the water supply will be sufficient for a high density residential development in future years.

Nor does the board's observation that the owners of the subject property "have a perfect legal right to pump as much underground water via these three wells as they may desire" constitute an adequate response to the criticism that there may not be enough water for all of the users in Cuddy Valley if the project is approved.

The suggestion that it would cost the county "between $100,000 and $200,000" to conduct comprehensive water resource studies in the Cuddy Valley area does not absolve the board of its duty of making a response based on specified current data or water studies of some kind which would indicate the true picture of the water supply for the area.

The availability of an adequate underground water supply for the proposed project and the availability of an alternate source of water by importation from other areas and its effect on the existing water users in the area is a matter of serious environmental concern. It is a matter of common knowledge that the existing limited underground water supply in most areas in California is threatened by increased residential development. Thus, the problem must be squarely faced by public agencies in deciding whether to approve a project.[3]

Resolution No. 76-119 also fails to respond to potential ground water pollution. In 1973 the Kern County Health Department and the United States Forest Service both commented with respect to the proposed project that because the method of sewage disposal is by individual septic tanks there may be an adverse effect upon the quality of the ground water unless the county monitors the disposal systems within the area. It recommended that the construction of a central sewage treatment facility be considered. Such adverse comments concerning pollution of the underground water supply clearly require a response by the lead agency.

*People* v. *County of Kern, supra,* holds that the final EIR should consider and comment upon the overall impact of Eastco's project and the other projects now in progress in Cuddy Valley regardless of their current state of development. (39 Cal.App.3d at p. 842, fn. 8.) The board's response is as follows: "This Board's approval of Eastco's tentative maps required that Eastco's final map comply with such specific plan for the entire Cuddy Valley future development. By this requirement this Board fully recognized that development of the subject 285 acres should not be considered and evaluated in a vacuum and that on the contrary development of the subject property should be allowed only in the context of overall planning for the future of the entirety of Cuddy

[3]We are not suggesting that the board of supervisors may not approve the project even though a study of projected water needs in the area indicates that a shortage eventually will occur. This is a matter to be decided by the board and not the courts. We hold only that resolution No. 76-119 fails to contain an adequate response to the problem of an inadequate water supply as required by our holding in *People* v. *County of Kern, supra.*

Valley. (See footnote 8 of *People* v. *County of Kern, supra.*)" The response completely lacks any analysis of the combined impact of the proposed project and other projects other than to acknowledge that "overall planning" is necessary.

Finally, resolution No. 76-119 is fatally defective as a final EIR because of its failure to include a detailed statement setting forth the mitigation measures proposed to reduce wasteful, inefficient, and unnecessary consumption of energy as required by Public Resources Code section 21100, subdivision (c), and section 15143, subdivision (c), of title 14 of the Administrative Code. ■ This portion of the statute, as amended, became effective January 7, 1975. Since resolution No. 76-119 was adopted on February 24, 1976, more than a year after the effective date of the energy mitigation measure, the board was required to comply with the amendment.

Eastco's contention that the county is only required to comply with the law in existence at the time the draft EIR was approved in 1973 is without merit. Public Resources Code section 21100 specifies the particular provisions to be contained in an EIR. The board's adoption in 1973 of the draft EIR as the final EIR for the Eastco project was in essence voided by this court in *People* v. *County of Kern, supra*; thus, no final EIR was in existence for the project until the board's action on February 24, 1976, when it adopted resolution No. 76-119. The board's attempt to relate its 1976 adoption of the final EIR back to 1973 will not remove its actions from the purview of the 1975 amendment to section 21100. Stated otherwise, the board cannot escape the applicability of an existing law by a purported "nunc pro tunc" approval of a prior act. (See *Selby Realty Co.* v. *City of San Buenaventura* (1973) 10 Cal.3d 110, 125 [109 Cal.Rptr. 799, 514 P.2d 111].)

Moreover, Public Resources Code section 21100, subdivision (c), should probably be given retroactive application. (See *City of Sausalito* v. *County of Marin* (1970) 12 Cal.App.3d 550, 557-559 [90 Cal.Rptr. 843]; *In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 589 [128 Cal.Rptr. 427, 546 P.2d 1371].) The energy mitigation amendment is substantive and not procedural in nature and was enacted for the purpose of requiring the lead agencies to focus upon the energy problem in the preparation of the final EIR. Because of the strong public policy which supports environmental protection and which requires a concerted and systematic effort of public and private interests in furtherance thereof (Pub.

Resources Code, § 21000), retroactivity can be inferred in order to enhance protection of a limited and vital resource.

Our conclusion that regardless of its window dressing resolution No. 76-119 does not constitute a good faith response to the adverse environmental criticisms is supported by the fact that the resolution was prepared by Eastco's attorney, Mr. Solomon, and not by the board or the planning agency as required by law. Section 15061, subdivision (b), of the guidelines requires that the lead agency prepare environmental documents by its own efforts or by contract if a project which requires an EIR is to be carried out by nongovernmental persons subject to the approval of the lead agency. While, "... the lead agency may require the person to supply data and information, both to determine whether the project may have a significant effect on the environment, and to assist in the preparation of an EIR by the agency. ... If information is provided in the form of a draft EIR, the lead agency may not use a draft EIR as its own without independent evaluation and analysis." (See also Cal. Admin. Code, tit. 14, § 15085, subd. (a).) Section 15085, subdivision (f), requires a final EIR to be prepared by the lead agency.

The obvious purpose behind section 15061, subdivision (b), and section 15085, subdivision (f), is to assure that CEQA is independently complied with by the lead agency and with a view toward protecting the environment. Public policy requires that CEQA's provisions be fully honored to prevent subversion of the law and to protect the environment. (See *Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 263 [104 Cal.Rptr. 761, 502 P.2d 1049]; *People* v. *County of Kern, supra,* 39 Cal.App.3d at p. 842.)

It is noteworthy that the board ignored the advice of its own counsel in adopting resolution No. 76-119.

It also is apparent from the resolution that the board approved the zoning amendment for Tracts Nos. 3590 and 3591 and Parcel Map No. 3144 because of the expenditure of money and effort by Eastco since 1971 in seeking approval of the required zoning changes. The following comment appears in the resolution: "Though it be true that this county is not estopped to deny any Eastco proposal in regards to the subject

property, [4] this board strongly believes that basic fairness to this property owner does require that government give some reasonable consideration to the substantial changes in position, expenditures and financial obligations which Eastco has incurred in good faith reliance upon prior established customs and practices of the County of Kern and prior approvals which the County of Kern gave and/or represented that it would give to Eastco proposals for development of the subject property. . . ." Throughout the resolution the board makes repeated references to the expenditures of money by Eastco in connection with the development of the project. For example, the following appears (at p. 4 of resolution No. 76-119): "Although the very substantial efforts and monies expended by Eastco over the past four years and the huge financial obligations incurred by Eastco in good faith reliance upon prior established practices of this County does not create an estoppel, as such, nevertheless basic fairness to Eastco does not require that this Board give some reasonable consideration to those circumstances." Thereafter, the board recites the history of Eastco's acquisition of the property; it states that "Eastco's willingness to pay $600,000.00 for the 285 acres was entirely dependent upon receipt by Eastco from the County of some reasonably reliable indication that the County would approve and allow Eastco's development proposal." "When Eastco acquired title to this property it did so in reasonable and good faith reliance upon a long standing policy and practice of this County to more or less ministerially and automatically approve a developer's 'final' subdivision map when the developer had complied with all conditions of the County approved 'tentative' subdivision map."

The economic hardship caused to an applicant by delays in getting approval of a project cannot justify the approval of the project without compliance with the law. (See *Spindler Realty Corp.* v. *Monning* (1966) 243 Cal.App.2d 255, 264-268 [53 Cal.Rptr. 7]; *Anderson* v. *City Council* (1964) 229 Cal.App.2d 79, 89-90 [40 Cal.Rptr. 41]; see also *Avco Community Developers, Inc.* v. *South Coast Regional Com., supra,* 17 Cal.3d 785 [132 Cal.Rptr. 386, 553 P.2d 546].) It is apparent that the

[4] In *People* v. *County of Kern, supra,* this court held that respondent County of Kern was not estopped to deny approval of the zone amendment. ". . . , unless the owner possesses all of the necessary permits, the mere expenditure of funds or commencement of construction does *not* vest any rights in the development." (Italics added.) (39 Cal.App.3d at pp. 838-839; see also *Avco Community Developers, Inc.* v. *South Coast Regional Com.* (1976) 17 Cal. 3d 785 [132 Cal.Rptr. 386, 553 P.2d 546].)

board through the efforts of Eastco's attorney has attempted to use the prior economic hardship to Eastco which was evaluated in *People* v. *County of Kern, supra,* to support its decision to approve the project.

We next observe that the approval of Parcel Map 3144 without an adequate EIR or a *negative declaration* that an EIR is *not* required was improper. Parcel Map No. 3144 would subdivide approximately 280 acres into 14 parcels having a minimum size of 20 acres per parcel. However, because the property is zoned A-1 with a minimum lot size of about 2½ acres, it is evident that each 20 acre parcel could be further subdivided into 2½ acre parcels. The project envisoned by Parcel Map No. 3144 includes only a portion of the land covered by Rancho El Contento and Tract Maps Nos. 3590 and 3591.

Parcel Map No. 3144 apparently is an alternative project which the board of supervisors approved because it feared that its resolution extending the life of Tract Maps Nos. 3590 and 3591 to April 14, 1977, might not be valid. (Appendix F.)

The public works director and county surveyor recommended that an EIR be prepared for Parcel Map No. 3144. (Appendix B.) The county counsel expressed reservations about the propriety of using resolution No. 76-119 as a basis for processing Parcel Map No. 3144 without an EIR unless appropriate zoning is enacted to insure a low density development according to specific planned studies. (Appendix E.)

By approving Parcel Map No. 3144 the board impliedly found that an EIR was not required; however, such an implied finding will not suffice. *Myers* v. *Board of Supervisors* (1976) 58 Cal.App.3d 413, 429 [129 Cal.Rptr. 902] states, ". . . the lead agency or the board of supervisors must make findings, either in the form of a *negative declaration* or an EIR to permit a reviewing court to bridge the analytic gap between the evidence and the ultimate decision." (Italics added; see also *No Oil, Inc.* v. *City of Los Angeles* (1974) 13 Cal.3d 68, 80-81 [118 Cal.Rptr. 34, 529 P.2d 66].)

If there is a possibility that a project may have a significant effect on the environment the agency undertakes an initial study. (Cal. Admin.

Code, tit. 14, § 15080.) If that study demonstrates that the project "will not have a significant effect on the environment" the agency may so declare in a brief negative declaration. (Cal. Admin. Code, tit. 14, § 15083.)[5] If, however, the project is one which may have a significant effect on the environment an EIR is required. (Pub. Resources Code, §§ 21100, 21151; Cal. Admin. Code, tit. 14, § 15080.)

Here the initial study determined that an EIR was necessary for Parcel Map No. 3144. Thus, under section 15081, subdivision (a) of title 14, an EIR should have been prepared. In any event, if the board believed that an EIR was not required for the project envisioned by Parcel Map No. 3144, it should have declared this to be the fact. Because Parcel Map No. 3144 covers part of the same property as that covered in Tract Maps 3590 and 3591 it perhaps can be argued that the EIR prepared for that project can be applied to Parcel Map No. 3144 by appropriate action by the board of supervisors. However, this was not done.

Eastco requests in its return to the order to show cause that this court mandate the superior court to allow Eastco to file its cross-complaint for inverse condemnation and rescission against the State of California in the event that the court's order vacating the preliminary injunction is reversed. The request is improper, however, because no showing has been made that the superior court will refuse to allow Eastco to file its cross-complaint. (See 5 Witkin, Cal. Procedure (2d ed.) Extraordinary Writs, § 64, pp. 3841, 3842.)

The order vacating the preliminary injunction is reversed and the trial court is directed to enjoin the respondent County of Kern from issuing a building permit or other entitlements of use until said respondent has complied with *People* v. *County of Kern* and the views expressed herein.

Let a writ of mandate issue requiring respondent County of Kern to revoke, suspend, set aside and otherwise void the zoning change

[5]The negative declaration must include a brief description of the project, a finding that it will not have a significant effect on the environment, a brief statement of reasons to support the findings, and a statement indicating who prepared the initial study and where a copy of it may be obtained. (§ 15083, subd. (b), tit. 14.)

approvals for Tract Nos. 3590 and 3591 and Parcel Map No. 3144 approval contained in its resolution No. 76-119.

Brown (G. A.), P. J., and Gargano, J., concurred.

The petition of the real parties in interest for a hearing by the Supreme Court was denied January 5, 1977.

APPENDIX

Before the Board of Supervisors
County of Kern, State of California

20-3590
20-3591
20-3144

In the matter of:
EASTCO SUBDIVISION MAP NOS. 3590 AND 3591, AND EASTCO PARCEL MAP NO. 3144

Resolution No. 76-119
Minute Book 301 Page______
Resolution Book 70 Page______

I, VERA K. GIBSON, Clerk of the Board of Supervisors of the County of Kern, State of California, do hereby certify that the following resolution, proposed by Supervisor Webb, seconded by Supervisor Mitchell, was duly passed and adopted by said Board of Supervisors at an official meeting hereof this 24th day of February, 1976, by the following vote, to wit

AYES: Jackson, Head, Young, Webb, Mitchell
NOES: None
ABSENT: None

/s/ Vera K. Gibson
Clerk of the Board of Supervisors,
County of Kern, State of California

RESOLUTION

Section 1. WHEREAS:

IT IS HEREBY RESOLVED by the Board of Supervisors of the County of Kern, State of California, that:

Based upon the below stated factual and legal considerations the County of Kern through its Board of Supervisors does hereby reapprove the tentative Eastco Tract maps numbered 3590 and 3591, the related 1973 "EIR" and the related zone changes from "A-1" to "E-1," and "E-2" and "E-3" and the so called Cuddy Valley Specific Plan and the County of Kern also hereby approve the Eastco parcel map number 3144, provided that before Eastco commences any physical development whatsoever upon said land Eastco must first petition for and procure from the Kern County Superior Court, in its case number 125725, a final order vacating the preliminary injunction which is now of record in that case. In its application for vacation of said injunction Eastco shall attach thereto a copy of this resolution and shall seek a declaratory judgment as to validity of the reapprovals and approval above stated. Eastco shall give notice of said application on the Attorney General's office of the State of California, Project Land Use Inc., the Sierra Club, the San Fernando Girl Scout Council, the Southern California District Pentacostal Church of God and the American Baptist Churches of the Pacific Southwest. Should the Court vacate said injunction then in that event the Board does hereby direct that all departments of the County of Kern shall thereafter act upon any further applications of Eastco in regards to the subject land in accordance with the views of the Board as hereinafter expressed.

In taking this action the Board has considered and attempted to give fair and impartial consideration and weight to all of the following factual and legal matters.

Eastco's efforts to secure County approval of some economically pragmatic and feasible use for the subject property has now been pending and on going for more than

four full years. During those four years there has been numerous and repeated public hearings before this Board and various and sundry County departments wherein repeated, detailed and comprehensive consideration has been given to all aspects of Eastco's development proposals, particularly including various and sundry environmental questions and objections that have been voiced by various and sundry groups, agencies, persons and organizations. This Board is deeply concerned that after all of these years and after all of these repeated public hearings and deliberations this citizen and landowner has been unable to secure any definitive answer as to whether or not its development proposals or any economically pragmatic use of its land will be approved and allowed by the government of this county and state. This Board strongly feels that any semblance of fundamental fairness to this landowner requires that government forthwith give this landowner a decisive and unequivocal answer as to whether it will approve and allow this property owner to engage in any economically pragmatic use and development of the subject property.

Before casting his vote upon this resolution each member of this Board acknowledges that he has carefully read the entirety of the opinion of the Court of Appeal in the case of *People* v. *County of Kern* (1974), 39 CA3d 830, 115 CR 67. Each member of the Board has also duly considered the opinion and judgment of the Kern County Superior Court in its case number 125053 entitled *Sierra Club* v. *County of Kern.* In casting his vote upon this resolution it is the intent of each member of this Board to fully respect and to act wholly in conformity with the letter and spirit of the Court's opinion and judgment in each of those cases.

Though it be true that this County is not estopped to deny any Eastco proposal in regards to the subject property, this Board strongly believes that basic fairness to this property owner does require that government give some reasonable consideration to the substantial changes in position, expenditures and financial obligations which Eastco has incurred in good faith reliance upon prior established customs and practices of the County of Kern and prior approvals which the County of Kern gave and/or represented that it would give to Eastco's proposals for development of the subject property. The Board therefore deems all of the following factors and considerations to be pertinent to its decision.

For many years prior to and including 1971 the subject property was being commercially exploited and used as a combination turkey and grain farm. The property consists of 285 acres located in Cuddy Valley. The Board is informed that approximately 100,000 turkeys were annually raised and housed upon this land. Various buildings and structures existed on the land for the housing of the turkeys and the farm operators. Prior to 1971 a natural spring and two water wells existed on the land. These sources fully supplied very substantial water requirements of the farm and turkeys. In 1971 a third water well was drilled on the land to supplement one of the existing wells which was in poor condition. These three water wells are still in existence. All available data indicates that underground water available from these wells is fully adequate to supply all projected water needs of the residents who would reside upon the property if Eastco is allowed to develop the property in accordance with its tract maps numbered 3590 and 3591. The Board deems it highly pertinent to note that the owners of the subject property have a perfect legal right to pump as much underground water via these three wells as they may desire regardless of whether the property is developed pursuant to maps 3590 and 3591 or whether the property is reverted to commercial exploitation as a combination turkey and grain farm. Thus, there is no assurance nor probability that reduction of underground water usage would be accomplished by refusing to approve any of Eastco's alternative development plans. This consideration is deemed by this Board to be a specific and rather decisive answer to the questions raised by some sources as to the underground water resources within the Cuddy Valley.

During its many years of usage as a turkey and grain farm the subject property has been enclosed by fencing. This Board is acutely aware that assertions have been made by some

that development of this property pursuant to maps 3590 and 3591 might have some adverse effect upon California condors, deers and native vegetation within the Cuddy Valley area. This Board finds said assertions to be far fetched and unpossessed of any reasonable merit in that it would not appear that a long time commercially exploited turkey and grain farm would be a likely nesting ground for condors nor a valuable area for deer nor a significant preserve for native vegetations. Indeed, if this Board could reasonably arrive at a contrary opinion then this Board would feel constrained to take affirmative steps to attempt to terminate current girl scout and church group camps within Cuddy Valley which no doubt have some adverse environmental effects.

Questions have also been raised by some as to asserted fire hazards, soil erosion risk, damage to the historical and archaeological value of the area, over-population, and adverse effects on nearby youth camps that might arise from the proposed Eastco development by itself or by its effect in combination with other anticipated developments in the area. This Board fails to perceive that property long exploited as a commercial turkey and grain farm would have any significant historical and archaeological value. This Board does not perceive that development of the Eastco property would adversely effect any historical or archeological value of objects located elsewhere in the Cuddy Valley. The Board finds that the proposed Eastco development will not significantly exacerbate fire risk in the Cuddy Valley. If the Board were of the opinion that unreasonable fire risks existed for residents within the Cuddy Valley, this Board would feel constrained to disapprove Eastco's development proposal and to also take steps to prohibit or severely restrict the usage of youth camps within the area, particularly during the summer months when fire risks are greatest. The Board finds that development of the Eastco property in conformity with the Uniform Building Code of the County of Kern, and in conformity with the Cuddy Valley specific plan and in conformity with tract maps 3590 and 3591 will not give rise to any significant soil erosion risk nor any over-population of Cuddy Valley. However, as is hereinafter noted, this Board will view with great caution any further or future applications for any additional substantial residential developments within the Cuddy Valley.

Some sources have also asserted that the risk of earthquakes is so peculiarly significant within Cuddy Valley that all of Eastco's development proposals should be denied. If this risk is of that magnitude then it would likewise seem highly desirable that this Board take some immediate affirmative steps to prohibit those groups which currently and for many years have brought thousands of children into Cuddy Valley to enjoy girl scout and church group facilities within the Valley at locations astride known earthquake faults. On balance it is the considered judgment of this Board that residential developments should not be denied merely because of the risk of future earthquakes. The Board adheres to this view in a large measure because it is well known that there is hardly an area within this County and State which is not located upon or within effective proximity to known earthquake faults. Indeed, in the light of the severe 1952 Bakersfield and Tehachapi earthquakes a contrary Board viewpoint would constrain this Board to virtually prohibit any and all future residential developments within Kern County.

Although the very substantial efforts and monies expended by Eastco over the past four years and the huge financial obligations incurred by Eastco in good faith reliance upon prior established practices of this County does not create an estoppel, as such, nevertheless basic fairness to Eastco does require that this Board give some reasonable consideration to those circumstances. The Board has been presented with credible evidence as follows: When Eastco acquired title to this property it did so in reasonable and good faith reliance upon a long standing policy and practice of this County to more or less ministerially and automatically approve a developer's "final" subdivision map when the developer had complied with all conditions of the County approved "tentative" subdivision map. (See footnote 7 of *People* v. *County of Kern, supra.*) Because Eastco was not at all interested in purchasing the property unless it had some reasonably reliable advance indication that the County would likely approve Eastco's development

plan, the March 1971 purchase contract into which Eastco entered gave Eastco an option to cancel if the County failed to approve Eastco's tentative subdivision maps. The contract specified a purchase price in excess of $600,000.00. Eastco's willingness to pay $600,000.00 for the 285 acres was entirely dependent upon receipt by Eastco from the County of some reasonably reliable indication that the County would approve and allow Eastco's development proposal. The fair market value of the 285 acres was clearly far less than $600,000.00 if the County would not approve residential development of the acreage as Eastco proposed. On 10/21/71 at Eastco's request the County, after various public hearings at which no protests were voiced, changed the zoning of the 285 acres from "A" to "A-1", which latter zone provided that one single-family residence may be built upon each 2.5 acres of land. During this same time, Eastco prepared and started processing its tentative subdivision map through the various County departments. Said map proposed that the property would ultimately be rezoned to a combination of "E-1" and "E-2" and "E-3" zones on which single family dwellings would be built on 356 lots with a minimum square footage of 14,000 and an average lot size of 29,000 square feet or 1.3 dwellings per acre and an average projected population density of 1.7 persons per acre. (See pages 9 and 12 of Eastco's 4/73 draft EIR). On May 15, 1972, after numerous public hearings this Board approved Eastco's tentative map with various conditions specifically including a requirement that a so called specific plan be prepared as to how all future development within Cuddy Valley should be carried out. This Board's approval of Eastco's tentative maps required that Eastco's final map comply with such specific plan for the entire Cuddy Valley future development. By this requirement this Board fully recognized that development of the subject 285 acres should not be considered and evaluated in a vacuum and that on the contrary development of the subject property should be allowed only in the context of overall planning for the future of the entirety of Cuddy Valley. (See footnote 8 of *People* v. *County of Kern, supra.*)

In due course said specific plan for the overall Cuddy Valley area was prepared and after several public hearings before various County departments said overall Cuddy Valley specific plan was adopted and approved by this Board on October 17, 1972. Having received Board approval of both its tentative and the overall Cuddy Valley specific plan Eastco's obligation to purchase the property had become absolute and unconditional and by late October 1972, the Board is advised that Eastco had in fact paid some $200,000.00 on the $600,000.00 purchase price. It is also to be noted that Eastco's purchase price payments and expenditures of substantial other sums for preparation and processing of its tentative map and the Cuddy Valley specific plan and this Board's approval of the tentative map and the specific plan all preceded the December 5, 1972 effective date of CEQA including section 21169 of the Public Resources Code.

Notwithstanding that CEQA (i.e., the California Environmental Quality Act) did not become effective until December 5, 1972, this County in 1973 ordered that Eastco submit an EIR (i.e., Environmental Impact Report) for consideration before the County would consider Eastco's final maps and the required "E-1", "E-2", and "E-3" zone changes. In May, 1973, Eastco submitted its draft EIR to the County and some 25 state agencies. After written comment thereon by various state and county agencies and private parties and after several public hearings, this Board on October 1, 1973 finally approved the EIR and the E-1, E-2, and E-3 zone changes. This Board is advised that by that time Eastco had not only paid almost $200,000.00 on the $600,000.00 purchase price, plus more than $100,000.00 for engineering and related expenses and Eastco had also become unconditionally obligated to the seller for the more than $500,000.00 purchase price principal and interest balance.

Thereafter, the State through its Attorney General acting at the request of some persons associated with various groups above mentioned, initiated suit in the Kern County Superior Court (case no. 125725) wherein the State sought invalidation of this Board's October 17, 1973 approval of the EIR and the E-1, E-2, and E-3 zone changes upon the grounds that this Board had "failed to properly evaluate and respond to the

comments and objections to the draft EIR as required by law". The Kern County Superior Court duly considered and rejected the arguments of the Attorney General. But in June, 1974, the Fifth District Court of Appeal enjoined Eastco from developing the property solely upon the grounds that there was no "substantial evidence" in the record that this Board, as the "Responsible Agency" had made a "good faith, reasoned analysis" of various environmental questions which had been raised in regards to the draft EIR. The Court of Appeals held that before this Board could lawfully approve an EIR the record must contain some "substantial evidence" that the Board had not merely "swept [environmental objections] under the rug" but on the contrary that the Board had in good faith addressed reasoned analysis to environmental questions raised by the various objectors. It bears emphasis that the Court of Appeal did not hold and CEQA does not provide that this Board cannot approve an EIR even though it is certain that the proposed project will have substantial and unavoidable adverse environmental effects. On the contrary CEQA and the Court of Appeal opinion in *People* v. *County of Kern, supra,* merely require that the record contain some substantial evidence that good faith, detailed, specific and reasoned consideration has been given by the Board to all significant environmental objections and that the record set forth those factors of overriding importance which have caused the Board to decide upon approval of the project proposal notwithstanding adverse effects which the project may have upon the environment. This Board also notes that in footnote 8 of the opinion in *People* v. *County of Kern, supra,* the Court of Appeal approvingly cites the case of *Hixon* v. *County of Los Angeles,* 38 C.A.3d 370, 113 CR 433 as being an authoritative decision in the EIR field. This Board therefore deems it appropriate to note that the case of *Hixon* v. *County of Los Angeles* teaches that:

> " 'Congress did not establish environmental protection as an exclusive goal; rather, it desired a reordering of priorities, so that environmental costs and benefits will assume their proper place along with other considerations. . . . Thus the general substantive policy of the Act is a flexible one. It leaves room for a responsible exercise of discretion and may not require particular substantive results in particular problematic instances.' These observations are equally applicable to CEQA."

Hereinabove this Board has devoted specific detailed consideration and analysis to environmental questions regarding water resources, wildlife, and earthquake risk and other matters. Likewise, this Board has above addressed specific consideration to some of the equitable and societal considerations which this Board strongly feels are justification for approval of Eastco's proposed development notwithstanding that some possible adverse environmental effects may result from such a development. To those comments this Board adds the following:

This Board does not believe that the proposed Eastco development will cause any major traffic problems. It is true that there are instances of traffic congestion on Cuddy Valley road. But said problems have largely been due to the winter season influx of large numbers of "snow bunnies" in the Mount Pinos area. Moreover the Board has, by its adoption of the Cuddy Valley Specific Plan, proposed a secondary highway through the Valley to alleviate this problem. Eastco's proposed development would provide the first segment of this highway.

No doubt air pollution in the Cuddy Valley is increased by the large seasonal and transient influxes from Los Angeles County, but this Board does not believe that the small increase in permanent residential population of Cuddy Valley which would result from the Eastco proposals would significantly exacerbate air pollution in the Cuddy Valley.

This Board also has in mind that the construction and residential development industry is critically important to the overall economic health, development and growth of Kern County. This board perceives that its duty to protect the environment of this County must be fairly balanced along with the equally important duty of government to

treat its citizens and landowners in a fair and equitable manner. This Board sincerely believes that neither the environment, nor the equities of an individual property owner nor the economic growth of this County can be properly ignored. All of these factors must and should be given fair, balanced objective and impartial consideration by this Board. It is in this spirit and with this committment that this Board has considered the various factors involved in this matter. Whether the judgment of this Board be right or wrong this resolution does represent the honest and reasoned judgment of this Board and consonant with the thoughts expressed by the Court of Appeal in *People* v. *County of Kern, supra,* it is believed that this resolution sets forth the views of this Board in a manner that will allow:

"... appropriate action come election day should a majority of the voters disagree."

Finally this Board notes that it has hereby approved both the Eastco subdivision and parcel maps because the Board is advised that Eastco's subdivision map may no longer be valid notwithstanding a September 9, 1975 Board resolution that the life of said subdivision map be extended to April 14, 1977. Thus should it be judicially determined that the Eastco subdivision map has expired then it is the intent of this Board to at least leave Eastco with the option of proceeding with development of its property pursuant to parcel map 3144.

This Board wishes to also hereby make it clear that it will view with great caution any further or future proposals for any other developments within the Cuddy Valley and will take into consideration the advisability of further studies and investigations before substantial density developments take place relative to the sufficiency of facilities for vehicular access, for sewage disposal, and for water supply resources (which this Board is informed could cost between $100,000.00 and $200,000.00 if comprehensive water resources studies extend over the entire Cuddy Valley).