[Civ. No. 28804. Fourth Dist., Div. One. Apr. 25, 1984.]

CITY OF POWAY, Plaintiff and Appellant, v.
CITY OF SAN DIEGO, Defendant and Respondent;
PARDEE CONSTRUCTION COMPANY, Intervener and Respondent.

COUNSEL

Jean Leonard Harris, Garcia & Jones, Esperanza M. Garcia and Nancy M. Jones for Plaintiff and Appellant.

John W. Witt, City Attorney, Ronald L. Johnson, Senior Chief Deputy City Attorney, C. Alan Sumption, Chief Deputy City Attorney, and Anthony Shanley, Deputy City Attorney, for Defendant and Respondent.

Charles L. Birke and Sandler & Rosen for Intervener and Respondent.

## OPINION

**BUTLER, J.**—The trial court denied the petition of the City of Poway to set aside the City of San Diego's approval of Pardee Construction Company's project called Sabre Springs. The plan contemplates 5,290 dwelling units, a population of 12,000 people with provisions for industrial and commercial facilities, schools and a mobilehome park, all to be phased in over a period of years.

I

The Sabre Springs planning area is located about 17 miles north of the central business district of San Diego and 12 miles south of Escondido. It lies athwart Poway Road and abuts Interstate 15 on the west and Poway to the east. Poway Road is the principal access from I-15 to and beyond Poway. Nearby existing communities include Penasquitos East to the west and Mira Mesa to the southwest. Two adjacent communities are planned for development in the 1980's: Miramar Ranch North to the south and Rancho Carmel to the north. All of these communities including Sabre Springs are situated in the "I-15 corridor."

In the latter 1970's, San Diego formulated a growth management policy culminating in the 1979 progress guide and general plan. Sabre Springs is within the "planned urbanizing area" in which development is required to occur under a development or a community plan. The 1979 general plan designates Sabre Springs for residential development with community, commercial and recreation areas north of Poway Road.

Pardee hired Project Design Consultants to prepare a community plan for the Sabre Springs project. The consultants worked with San Diego's Planning Department. A draft of the plan was circulated. Pardee retained Regional Environmental Consultants, a private firm, to prepare an environmental impact report (EIR) which issued March 30, 1982, addressing the environmental impact of the project. Following public hearings and revisions, the planning commission on July 1, 1982, approved and recommended adoption by the city council of the EIR, the Sabre Springs Community

Plan, and amendment of San Diego's general plan to incorporate the Sabre Springs Community Plan.

San Diego noticed a hearing for August 3, 1982, to consider these matters and proposed rezonings to accommodate the proposed development. The hearing was continued to August 10, 1982, and the city council approved the EIR, adopted the community plan, amended the general plan and rezoned the property.

Poway's petition for a writ of mandate is styled "administrative mandate" and sought to set aside San Diego's approval of the community plan and the EIR, claiming: (1) factual errors and omissions in the EIR; (2) lack of substantial evidence to support approval of the EIR and the community plan; and (3) abuse of discretion in that the EIR did not reflect the city's independent judgment because the report had been prepared by Pardee's consultant.

On this appeal, Poway makes the same contentions, adding the trial court's standard of review was erroneous. Poway has not challenged the zoning ordinances enacted by San Diego to implement the Sabre Springs Community Plan, or the project as one of a series leading to development of the "I-15 corridor." Poway does not ". . . intend to prevent the construction of the Sabre Springs project" or stop or defeat the project. Poway contends San Diego ignored its concerns about the project.

## II

Poway claims the trial court applied the wrong standard of review. The contention is without merit. ■ Consideration of an EIR's adequacy is a judicial function. (*Environmental Defense Fund, Inc.* v. *Coastside County Water Dist.* (1972) 27 Cal.App.3d 695, 704 [104 Cal.Rptr. 197].) Judicial inquiry into Poway's charges San Diego did not comply with applicable California Environmental Quality Act law[1] is limited to the question of abuse of discretion, which is established if the agency has not proceeded as required by law or its decision is not supported by substantial evidence. (*No Oil, Inc.* v. *City of Los Angeles* (1974) 13 Cal.3d 68, 74 [118 Cal.Rptr. 34, 529 P.2d 66]; § 21168.5.) Courts do not pass upon the correctness of an EIR's environmental conclusions but only upon its sufficiency as an informative document (*County of Inyo* v. *City of Los Angeles* (1977) 71 Cal.App.3d 185, 189 [139 Cal.Rptr. 396]).

---

[1] Public Resources Code section 21000 et seq. All statutory references are to the Public Resources Code unless otherwise specified.

The court followed the correct standard. In any event, the entire administrative record is before us. We follow the same standard on review as applied by the trial court (*Brentwood Assn. for No Drilling, Inc.* v. *City of Los Angeles* (1982) 134 Cal.App.3d 491, 501 [184 Cal.Rptr. 664]). The questions thus posed are: Did San Diego proceed as required by law; is its decision supported by substantial evidence. We reply in the affirmative.

### III

Poway contends San Diego did not exercise independent judgment as required by law in approving the EIR prepared by Pardee's consultants. ■ While San Diego may require Pardee to submit an EIR, the document may not be adopted by San Diego as its own without independent evaluation or analysis and must reflect San Diego's independent judgment. (*People* v. *County of Kern* (1976) 62 Cal.App.3d 761, 775 [133 Cal.Rptr. 389]; Cal. Admin. Code, tit. 14, § 15061, subd.(b).)

Poway points out San Diego contributed some eight introductory pages to the EIR and the word "required" as to necessary traffic facility improvements was changed to "assure" at Pardee's request. This is said to demonstrate the lack of quality in the EIR process and Pardee's domination of San Diego's planning function such that no independent review was conducted.

Poway does not direct us to any other part of the administrative record otherwise negating the presumption San Diego performed its duty independently to exercise its judgment on the draft EIR (Civ. Code, § 3529), obeyed the law (Civ. Code, § 3548), and official duty has been regularly performed (Evid. Code, § 664). *People* v. *County of Kern, supra,* 62 Cal.App.3d 761, 775, requires an independent review of EIR documentation. There, the court considered the preparation by the developer's attorney of a self-serving resolution of the lead agency dealing with responses to environmental criticisms. The resolution failed to address the criticisms, reciting instead the developer's reliance on county past practices, its substantial expenses incurred in planning the project and its good faith. The court noted the lead agency ignored the advice of its lawyer who counseled against adoption of the resolution. *County of Kern* is distinguishable. There, the lead agency was clearly captive to the developer. Hard evidence supports the conclusion the lead agency failed to exercise independent judgment. Poway's contentions here are speculative and conclusionary. As we shall see, the record in its totality does not demonstrate a San Diego failure independently to review the EIR.

## IV

Poway next contends San Diego abused its discretion in failing to proceed as required by law in that the city did not respond with specificity in the final EIR to Poway's comments and objections to the draft EIR (*People* v. *County of Kern* (1974) 39 Cal.App.3d 830, 884 [115 Cal.Rptr. 67]; Cal. Admin. Code, tit. 14, § 15146, subd. (a)). The draft of the EIR circulated April 1, 1982. Poway's Councilmember Emery told the San Diego City Council at the August 10, 1982, hearing Pardee, San Diego and Poway carried on exchanges of information during the EIR process. San Diego Planning Department representatives held seven workshops. The planning commission held two public hearings to discuss the plan. There were extensive contacts between San Diego and Poway commencing September 1, 1981.

On June 3, 1982, Poway responded by letter to the draft EIR acknowledging the planning process had been followed by it for the preceding year and San Diego had continuously kept Poway informed of these activities. The letter specified two areas of concern, traffic and high density land use incompatible with Poway's adjacent low residential land uses.

Poway noted Sabre Springs would exacerbate already heavy usage of Poway Road and create overwhelming demands on its interchange with I-15. Poway suggested a major revision in the project to include extension of Spring Canyon Road to serve areas south of Poway Road and an extension of Sabre Springs Parkway to encourage traffic to avoid the I-15 interchange.

Poway suggested the proposed high density residential uses in the easterly part of the project be reduced to achieve compatibility with adjoining lower density uses in Poway.

The Sabre Springs Community Plan addressed Poway's traffic concerns as expressed in the letter by delaying development south of Poway Road for 18 months and requiring construction of traffic facilities in each of the five phases prior to issuance of building permits in each such phase. The final EIR addressed Poway's concerns as to density in the areas adjacent to Poway through additional open space requirements and lowered densities.

On August 10, 1982, the day of the public hearing, Poway presented a letter to the San Diego City Council with an attachment containing 53 challenges to the project. The lateness of the challenges obviously made a detailed response impossible as of the date of the hearing. Poway did not ask San Diego's City Council to continue the hearing to afford time for response. California Administrative Code, title 14, section 15162 provides:

"If any public agency or person who is consulted with regard to an EIR fails to comment within a reasonable time as specified by the Lead Agency, it shall be assumed, absent a request for a specific extension of time, that such agency or person has no comment to make." We do not find any cases dealing with failure to respond to comments made on the day of the hearing on the EIR. *Santiago County Water Dist.* v. *County of Orange* (1981) 118 Cal.App.3d 818, 834-835 [173 Cal.Rptr. 602], cited by Poway is not on point. There, a draft EIR circulated August 21, requesting comments by September 20. Responses were published in January, additional comments were received in February. The hearing on the EIR was held May 2. No further comments, written or oral, from the complaining commentator were made at the hearing. The court held the comments earlier made were timely.

*People* v. *County of Kern, supra,* 39 Cal.App.3d 830, 836, concluded an agency's written responses to written comments, all occurring prior to the hearing, were insufficient. While oral comments and objections were made at the hearing and no response was made to them by the agency, the failure of the agency adequately to respond to the comments made well in advance of the hearing required reversal.

█ Here, the draft EIR circulated April 1. Poway commented in writing on June 3. Poway's comments received adequate response. On August 10, the day of the hearing, Poway filed 53 challenges to the EIR. Understandably, delay is a tactic in environmental disputes to force developers to accede to project design changes simply because of the economic pressures to move a development forward. Fairness is a concept not yet outmoded. We think the dumping of 53 challenges on the day of the hearing without explanation as to the obvious delay is unconscionable. Moreover, all of Poway's challenges were anticipated by the draft EIR.

At the hearing in the trial court, Pardee filed a copy of Poway's 53 challenges with an annotation of particular responses. Those responses to the challenges demonstrate the EIR had considered the issues raised by Poway. No more is required.

V

Poway claims San Diego failed to follow the mandate of Public Resources Code section 21081[2] prohibiting approval of a project where the EIR iden-

---

[2]Public Resources Code section 21081 states: "Pursuant to the policy stated in Sections 21002 and 21002.1, no public agency shall approve or carry out a project for which an environmental impact report has been completed which identifies one or more significant effects thereof unless such public agency makes one, or more, of the following findings:

"(a) Changes or alterations have been required in, or incorporated into, such project

tifies significant environmental effects unless specific findings are made as to such effects.

### A. *Traffic Circulation*

The EIR identified local traffic circulation as having a significant environmental effect and points out the need for specific mitigation measures. The EIR refers to measures in the community plan designed to mitigate these effects. The EIR specific finding made by the city council is:

"1. *Traffic Circulation*

"*Impact.* The development of the Sabre Springs community will result in the generation of a substantial transportation demand on the local and regional street and highway system. Sabre Springs is in the Interstate 15 (I-15) corridor and the projected growth within this corridor, coupled with the development of the community plan area, may have a significant impact on the regional traffic system.

"*Finding.* A detailed transportation phasing program for the Sabre Springs community has been prepared. This phasing program sets forth specific transportation system facilities improvements that must be assured prior to the recordation of the final subdivision maps for each phase of the community's development. These facilities improvements when implemented will mitigate potential traffic circulation impacts to an acceptable level (EQD No. 81-05-43:33-40)." (3 Admin. Record, Ex. 2, p. 204.) Poway attacks the finding as conclusionary and insufficient as a matter of law in light of *Village Laguna of Laguna Beach, Inc.* v. *Board of Supervisors* (1982) 134 Cal.App.3d 1022 [185 Cal.Rptr. 41]. There, the court found an EIR to be sufficient but reversed for failure of the lead agency to make a finding as required by section 21081. The agency finding simply recited subdivision (c) of section 21081, failed to disclose any reasons for coming to its conclusion, recited adverse effects as to eight different categories and concluded the adverse effects could be mitigated only by abandoning the project and prohibiting any development which was deemed economically infeasible.

■ "The state policy is that 'public agencies should not approve projects as proposed if there are feasible alternatives or feasible mitigation measures

which mitigate or avoid the significant environmental effects thereof as identified in the completed environmental impact report.

"(b) Such changes or alterations are within the responsibility and jurisdiction of another public agency and such changes have been adopted by such other agency, or can and should be adopted by such other agency.

"(c) Specific economic, social, or other considerations make infeasible the mitigation measures or project alternatives identified in the environmental impact report."

available which would substantially lessen the significant environmental effects of such projects' (§ 21002) and that '[e]ach public agency shall mitigate or avoid the significant effects on the environment of projects it approves or carries out whenever it is feasible to do so.' (§ 21002.1, subd. (b).) Since the finding requirement was expressly enacted pursuant to that policy (see § 21081), it is clear that the purposes of section 21081 are that there be some evidence that the alternatives or mitigation measures in the EIR actually were considered by the decision making agency and, as the Supreme Court stated in a similar situation that there be a disclosure of 'the analytic route the . . . agency traveled from evidence to action.' (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 515 . . .; see also *Markley* v. *City Council* (1982) 131 Cal.App.3d 656, 671 . . . .) Thus, when a project is approved that will significantly affect the environment, CEQA places the burden on the approving agency to affirmatively show that it has considered the identified means of lessening or avoiding the project's significant effects and to explain its decision allowing those adverse changes to occur." (*Id.,* at pp. 1034-1035.)

■ Poway points out the draft EIR "required" construction of improvements to mitigate traffic impacts; at Pardee's request, the word "assured" was substituted in the findings. This is said to eliminate any requirement the traffic facility improvements will in fact be constructed. The EIR, however, continues to require the improvements to be constructed. This suffices. (*Village Laguna of Laguna Beach, Inc.* v. *Board of Supervisors, supra,* 134 Cal.App.3d 1022, 1029-1030.)

Poway disputes the validity of the voluminous traffic data included in the EIR from which conclusions were drawn by San Diego adverse effects would be mitigated. We do not pass upon the correctness of the EIR's environmental conclusions but only upon its sufficiency as an informative document. (*County of Inyo* v. *City of Los Angeles, supra,* 71 Cal.App.3d 185, 189.) The finding incorporates the mitigation measures of the EIR. We find it sufficient.

### B. *Land Use*

San Diego's finding with respect to the impact of land use is challenged by Poway as "wholly lacking in factual content" passing on to Poway the consequences of the development.

"10. *Land Use*

"*Impact.* The development of the Sabre Springs community planning area will result in the irreversible change in the land use from low-intensity farming and grazing uses to relatively high-intensity urban uses.

"*Finding.* The *Sabre Springs Community Plan* has been developed in conformance with the City of San Diego's *Progress Guide and General Plan* (1979). Density-related impacts can be reduced to an acceptable level by the proper provision of urban support services, roadways, and associated improvements in a timely manner.

"Sabre Springs has been designed such that the location of the population centers, recreation centers, and commercial/employment centers are in reasonable proximity with one another in order to take advantage of the 'self-contained community' concept, to the extent feasible. More than 50 percent of the land area will be preserved in its natural state. This open space preservation will reduce the quantitative impacts that would be anticipated with a more dense project (EQD No. 81-05-43:116)." (3 Admin. Record, Ex. 2, p. 210.) The finding incorporates San Diego's General Plan and the Sabre Springs Community Plan which in turn is intertwined with the EIR. That document refers to earlier development plans in the I-15 corridor approved by San Diego as well as potential new communities. Interface between Poway and Sabre Springs is extensively reviewed including provision for urban services. The land use plan sets aside 54 percent of Sabre Springs in natural hillside and open space. Residential and commercial use is 37 percent.

Importantly, the EIR and the community plan are not approvals of specific construction projects such that assurance of building permits becomes a ministerial act. Applications for permits will be required and then—extant circumstances will be considered. We do not presume San Diego will act unreasonably as to these future events (*City of Del Mar* v. *City of San Diego* (1982) 133 Cal.App.3d 401, 415 [183 Cal.Rptr. 898]; *Twain Harte Homeowners Assn.* v. *County of Tuolumne* (1982) 138 Cal.App.3d 664, 677 [188 Cal.Rptr. 233]).

## VI

Poway further attacks, in generalities, findings on air quality, biological resources, urban services, geology and soils and visual quality and land form. These findings are said to be mere conclusions without discussion of mitigation measures or alternatives to reduce impacts or infeasibility of such measures or alternatives. On the contrary, each finding addresses impact or infeasibility, as the case may be, and includes adequate consideration of alternatives and relevant factors. Poway's blunderbuss misfires.

## VII

■ California Administrative Code, title 14, section 15089, subdivision (b) requires San Diego to state in writing its reasons in approving the EIR

when significant environmental effects are identified but not mitigated. Poway claims San Diego's statement of "overriding considerations" is conclusionary and insufficient. The statement notes while substantial avoidance or mitigation of adverse effects has been or will be achieved through measures described in the EIR: ". . . There is no complete mitigation available for the impacts associated with noise, biological resources, air quality and landform and visual quality. Each of the identified impacts would occur to some extent if any development were approved within the Sabre Springs community plan area. Short of adopting an economically and socially unacceptable no project alternative, any provision of housing on undeveloped land results in some environmental degradation." (3 Admin. Record, Ex. 2, p. 215.) The statement of overriding considerations then reviews San Diego's growth management policies, noting an increase of 138,500 dwelling units are required to meet anticipated growth demands through 1995, with some 100,000 units in planned urbanizing communities such as Sabre Springs. Fifty-eight percent of these will be in the I-15 corridor and 18 percent in the I-5 corridor, an interstate freeway to the west. Sabre Springs delayed development would shift pressures onto other areas not included in the urbanized growth plan or not scheduled for development prior to 1995. The statement recites need for housing and employment and concludes economic and social needs outweigh the ". . . limited impacts still associated with the community plan . . . ."

*Village Laguna* was reversed and remanded for adequate findings concerning overriding considerations. There, the no project alternative was the sole alternative examined by the agency. Here, the statement discusses economic and social needs in the dynamics of a city in the sun belt experiencing and anticipating explosive growth and the alternatives to Sabre Springs. Poway quarrels with conclusions reached by the lead agency. We find the statement sufficient. (*County of Inyo* v. *City of Los Angeles, supra,* 71 Cal.App.3d 185, 189.)

### VIII

■ Public Resources Code section 21061 requires an EIR ". . . to indicate alternatives . . ." to a project. Poway contends the EIR consideration of alternatives is defective as no finding is made as to infeasibility of the alternatives and the statement of alternatives lacks a sufficient factual basis to provide a good faith evaluation of the alternatives. Again, Poway leaves us in the dark without reference to the record.

Our reading of the EIR and other documents in the record persuades Poway's contentions are without merit.

As we noted in our discussion of overriding considerations, the findings demonstrate the consideration by San Diego of alternatives to the project.

The EIR includes a section VII, Project Alternatives. Three plan-level alternatives were considered. A "no project" alternative was rejected as inconsistent with San Diego's General Plan. An earlier project called Chicarita Creek Development Plan was considered, exhaustively reviewed and conclusions made to the effect the hillside development contemplated there would involve more impacts than Sabre Springs.

A third alternative was considered to reduce the impact occasioned by the housing density proposed by Sabre Springs. It was rejected as requiring redesign of the community plan without ". . . any significant benefit to the environmental resources of the area."

Six project-level alternatives were then considered. These deal with environmental impacts of specific and limited areas of the community plan. They include reduction in size of two parcels, elimination of one parcel, a realignment of Sabre Springs Parkway and resultant redesign of the underlying parcel, use of additional planned developments to assure creek environmental protections and a realignment of Route 125 to afford access from the southern part of Poway through Sabre Springs and north to Poway Road. Other realignments being considered by other agencies are reviewed.

We find the discussion on alternatives comprehensive, informative, factual and includes findings the community plan as presented is preferable. Poway's contentions to the contrary are without merit. The discussion of alternatives fulfills the requirements of the applicable law. (*Foundation for San Francisco's Architectural Heritage* v. *City and County of San Francisco* (1980) 106 Cal.App.3d 893 [165 Cal.Rptr. 401]; *Residents Ad Hoc Stadium Com.* v. *Board of Trustees* (1979) 89 Cal.App.3d 274 [152 Cal.Rptr. 585].)

Judgment affirmed.

Cologne, Acting P. J., and Wiener, J., concurred.