[Civ. No. 13388. Fourth Dist., Div. Two. Mar. 29, 1974.]

CONCERNED CITIZENS OF PALM DESERT, INC., et al., Plaintiffs and Appellants, v.
BOARD OF SUPERVISORS OF RIVERSIDE COUNTY, Defendant and Respondent;
CONSOLIDATED LAND INVESTMENT COMPANY, Real Party in Interest and Respondent.

---

## COUNSEL

Young, Henrie & McCarthy and John C. McCarthy for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, Robert H. O'Brien, Assistant Attorney General, Nicholas C. Yost, E. Clement Shute, Jr., and Louise H. Renne as Amici Curiae on behalf of Plaintiffs and Appellants.

Ray T. Sullivan, Jr., County Counsel, Gerald J. Geerlings and Tilden L. Brooks, Deputy County Counsel, for Defendant and Respondent.

Schlecht & McCullough and John S. McCullough for Real Party in Interest and Respondent.

---

## OPINION

**TAMURA, J.** — This is an appeal from a summary judgment dismissing plaintiffs' petition for administrative mandamus to review and set aside the issuance of a conditional use permit to real party in interest (Consolidated Land Investment Company, hereafter Consolidated) for a planned multiple residential development in the unincorporated territory of River-

side County known as Palm Desert.[1] Plaintiffs sought to challenge the validity of the permit for the alleged failure of the county board of supervisors to comply with the requirements of the California Environmental Quality Act of 1970 (CEQA; Pub. Resources Code, § 21000 et seq.).[2]

Plaintiffs filed their petition on November 30, 1972, attacking county approval of several separate and independent land development projects in the Palm Desert area, including the Consolidated project.[3] The county's demurrer to the petition was sustained with leave to amend and plaintiffs filed an amended petition on January 3, 1973. The pertinent allegations of the amended petition charged that on November 21, 1972, the county approved Consolidated's application for a conditional use permit for a multiple residential development on a 226-acre parcel of land in Palm Desert without complying with CEQA; that a purported environmental impact report (EIR) prepared and filed by Consolidated failed to meet the requirements of the CEQA in that (a) the county failed to give notice of the filing of the report; (b) the county neither invited nor received input from the public regarding the report; (c) the report was neither prepared, modified nor adopted by the county; (d) the report was deficient because it failed to consider the adverse effect of proposed five-story apartment buildings on the established pattern of low profile improvements in the desert communities and because it failed to consider the adequacy of water supply.

The county and Consolidated moved for a summary judgment. The motion was supported by a declaration of the senior planner of the county planning commission, a declaration of Consolidated's general partner, and by the record of the proceedings before the county planning commission and the board of supervisors. Plaintiffs filed no counteraffidavits.

The pertinent facts established by the uncontroverted declarations and the administrative record may be summarized as follows:

---

[1] Concerned Citizens of Palm Desert, Inc. is a nonprofit corporation whose membership is comprised of homeowners in the Palm Desert area. Plaintiff Bradley A. Walker, the individual plaintiff, is a homeowner in the area and purported to bring the action on behalf of the class of persons similarly situated. Consolidated is a limited partnership.

[2] Unless otherwise indicated, all statutory section references in this opinion will be to the Public Resources Code.

[3] This is a companion case to *Concerned Citizens of Palm Desert, Inc. v. Board of Supervisors (Eagle Development Co.), ante,* p. 257 [113 Cal.Rptr. 328], involving the Eagle Development project, which was one of the other projects challenged by plaintiffs.

The 226-acre parcel is a consolidation of various purchases by Consolidated over a period of approximately 8 years. Consolidated acquired the property for the purpose of establishing upon it a planned multiple residential development with appurtenant recreational facilities and open space, including an 18-hole championship golf course.

In 1971, in order to enable it to commence actual development of the property as planned, Consolidated filed an application with the county planning commission to rezone the property from its then R-A zoning into several districts permitting the various uses contemplated by the planned development. Following public hearings, the planning commission recommended to the board of supervisors that the property be rezoned to R-5, R-2-6000, R-2-A and R-3. The portion of the property recommended for the R-5 district (a recreational and open space district permitting golf courses) comprised more than 40 percent of the entire parcel. On October 12, 1971, following a noticed public hearing, the board of supervisors approved the planning commission recommendation and adopted an ordinance rezoning the property into the districts recommended by the commission.

In August 1972, Consolidated filed an application for a conditional use permit for a planned multiple residential development of 1,071 units. On September 21, 1972, East Area Planning Council of Riverside County (the agency established and designated by the board of supervisors to act on such applications from the Palm Desert area) held a public hearing on the application, approved the application, and reported its action to the board of supervisors.

Although no one took an appeal from the planning council action, Consolidated requested the board of supervisors to assume jurisdiction over the application for the conditional use permit, to set the matter for public hearing, and, before acting on the application, to consider an EIR which Consolidated had caused to be prepared and filed with the board of supervisors and the county planning department.

On October 17, 1972, the board of supervisors made an order assuming jurisdiction over the application, set it for public hearing, and directed the county interim committee on environmental quality (interim committee) and the county planning department to review the EIR filed by Consolidated and to report their findings to the board. The interim committee was established by the board of supervisors shortly after the decision in *Friends of Mammoth* v. *Board of Supervisors* (Sept. 21, 1972) 8 Cal.3d 247 [104 Cal.Rptr. 761, 502 P.2d 1049]. It was composed of department

heads of county agencies concerned with or having expertise in the environmental effects of a project.[4]

The interim committee held meetings at which it reviewed the EIR and the application for conditional use permit. Subject to certain minor exceptions, the committee concurred in the findings of the EIR that the project would not have a significant environmental impact and recommended that the board of supervisors approve Consolidated's application. The planning department made a separate analysis of the EIR and reported to the interim committee and to the board of supervisors that, with exceptions to which we shall refer later in this opinion, the EIR "adequately presents the environmental impacts which can be associated with the proposed project."

The board of supervisors held public hearings on the application for conditional use permit on November 14 and on November 21, 1972. At those hearings the senior planner of the county planning department reviewed in detail the project and the EIR. The board also received a written report from the county air pollution control district stating that the project would have no significant impact on the Coachella Valley environment. At the conclusion of the hearing on November 21, 1972, the board made its order granting the conditional use permit.

In a declaration in support of the motion for summary judgment, Mr. Homme (Consolidated's general partner) stated that the firm had expended more than $220,000, exclusive of land acquisition costs, for engineering and architectural fees, for construction and rehabilitation of water wells, water storage and distribution lines, for construction of sewer lines, and for landscaping, including the planting of some 10,000 trees.

Following argument and submission of the motion for summary judgment, the court determined that the action had no merit and ordered summary judgment in favor of defendant. A judgment of dismissal was thereafter duly entered.

Plaintiffs contend the judgment of dismissal should be reversed because the administrative record shows that the county failed to comply with the CEQA in the following respects: (1) The board of supervisors failed to give notice of the fact that an EIR was available for public examination

[4]The committee was composed of department heads from the following county agencies: air pollution control district, building and safety department, department of development, county flood control district, health and sanitation department, parks department, planning department, and road department.

and comment and (2) the EIR prepared by Consolidated was inadequate as a matter of law.

The county and Consolidated urge that the uncontradicted evidence demonstrated compliance with the CEQA, both in letter and spirit. They further contend that the judgment below should be affirmed on two additional independent grounds: (1) Plaintiff's failure to exhaust their administrative remedies and (2) validation of the project by provisions of the 1972 urgency amendment to the CEQA. (Stats. 1972, ch. 1154; eff. Dec. 5, 1972.)

From the analysis which follows, we have concluded that although the judgment cannot be affirmed on either of the two independent grounds suggested by the county and Consolidated, the judgment should be affirmed because the uncontroverted evidence shows compliance with the CEQA in the issuance of the conditional use permit. In the ensuing discussion we shall first consider the validity of the alternative grounds for affirmance advanced by the county and Consolidated and then the question of compliance with the CEQA.

I

EXHAUSTION OF ADMINISTRATIVE REMEDIES

The county and Consolidated contend that plaintiffs are not entitled to seek judicial review of the issuance of the conditional use permit because they failed to exhaust their administrative remedies.

If an administrative remedy is provided by statute or ordinance, that remedy must be pursued and exhausted before judicial relief may be sought under Code of Civil Procedure section 1094.5, subdivision (a). (*Ralph's Chrysler-Plymouth* v. *New Car Dealers Policy & Appeals Bd.*, 8 Cal.3d 792, 794 [106 Cal.Rptr. 169, 505 P.2d 1009]; *Igna* v. *City of Baldwin Park*, 9 Cal.App.3d 909, 914 [88 Cal.Rptr. 581]; *Dunham* v. *City of Westminster*, 202 Cal.App.2d 245, 249 [20 Cal.Rptr. 772].) However, in the case at bench the Riverside County ordinance provided no administrative remedy from the action sought to be reviewed.

Under the ordinance, a planning commission decision approving an application for a conditional use permit or variance is final unless an appeal is taken to the board of supervisors or unless the board orders the application transferred to it for further proceedings. In the event of an appeal or a transfer to the board, the ordinance provides that the board may pursue one of several alternative procedures. One of the alternatives is to set the

application for hearing and to decide the matter de novo as if no other hearing had been held.[5] In the case at bench, the board elected to pursue that alternative. It set the matter for hearing and decided the matter de novo. Consolidated had requested a de novo consideration by the board in hopes of avoiding an attack upon the conditional use permit on the ground an EIR was not made or considered before action was taken on the application.

The administrative action which plaintiffs sought to have reviewed was the decision of the board of supervisors and not the action of the planning commission. Since the ordinance provides no administrative remedy from a decision of the board after a de novo hearing on an application for a conditional use permit, the contention that plaintiffs were barred from seeking judicial relief because they failed to exhaust their administrative remedies must be rejected. The rule that a party must exhaust his administrative remedies before seeking judicial relief has no application where no administrative remedy existed. (*Ramos* v. *County of Madera,* 4 Cal.3d 685, 691 [94 Cal.Rptr. 421, 484 P.2d 93]; *Diaz* v. *Quitoriano,* 268 Cal. App.2d 807, 812 [74 Cal.Rptr. 358].)

[5]The pertinent provisions of the Riverside County ordinance are as follows: "Section 18.26:

"(7) TRANSFER TO BOARD OF SUPERVISORS ON APPEAL. The granting, either with or without conditions, or the denial of any application by the Commission shall be final unless, within 7 days after the meeting at which the Notice of Decision is placed on the Board of Supervisors' agenda, either of the following two actions is taken:

"(a) An appeal to the Board of Supervisors is made by the applicant or any owner of property within 300 feet of the exterior boundaries of the area actually occupied or to be occupied by the use which is the subject of the application. Such appeal shall be filed in writing with the Clerk of the Board of Supervisors; or

"(b) The Board of Supervisors orders the application transferred to it for further proceedings.

"(8) FURTHER PROCEEDINGS BEFORE THE BOARD OF SUPERVISORS. If either of the actions mentioned in paragraphs (a) and (b) of Subsection 7 above are taken, the Board of Supervisors may:

"(a) Affirm the action of the Commission; or

"(b) Require a transcript or recording of the testimony and all other evidence upon which the Commission made its decision. Upon receiving such evidence, the Board of Supervisors shall take such action as, in its opinion, is indicated by such evidence; or

"(c) Refer the matter back with or without instructions to the Commission for further proceedings which shall be noticed in accordance with the procedure set forth in this section (18.26) for an original hearing in those cases where the direction is given to take additional evidence or permit argument; or

"(d) Set the matter for hearing before itself. At such hearing the Board of Supervisors shall hear and decide the matter de novo as if no other hearing had been held."

## II

### VALIDATION ACT

■ The county and Consolidated contend that the project was validated by the provisions of the 1972 urgency amendment to the CEQA validating private projects undertaken and approved before the effective date of the amendment (Dec. 5, 1972). The validating provisions were enacted as sections 21169 and 21170 which are quoted in the margin below.[6]

It is urged that the conditional use permit was validated by section 21169, notwithstanding the fact that plaintiffs filed their mandate proceeding on November 30, 1972, five days before the effective date of the validating statute. The contention is that since a demurrer to the initial petition was sustained and since the amended petition was not filed until January 3, 1973, there was no valid petition on file before the effective date of the statute either alleging a cause of action or raising an issue of a violation of the CEQA. For reasons we expressed in *Concerned Citizens of Palm Desert, Inc.* v. *Board of Supervisors (Eagle Development Co.)*,

---

[6]Public Resources Code section 21169 provides: "Any project defined in subdivision (c) of Section 21065 undertaken, carried out or approved on or before the effective date of this section and the issuance by any public agency of any lease, permit, license, certificate or other entitlement for use executed or issued on or before the effective date of this section notwithstanding a failure to comply with this division, if otherwise legal and valid, is hereby confirmed, validated and declared legally effective. Any project undertaken by a person which was supported in whole or part through contracts with one or more public agencies on or before the effective date of this section, notwithstanding a failure to comply with this division, if otherwise legal and valid, is hereby confirmed, validated and declared legally effective."

Public Resources Code section 21170 provides: "(a) Section 21169 shall not operate to confirm, validate or give legal effect to any project the legality of which was being contested in a judicial proceeding in which proceeding the pleadings, prior to the effective date of this section, alleged facts constituting a cause of action for, or raised the issue of, a violation of this division and which was pending and undetermined on the effective date of this section; provided, however, that Section 21169 shall operate to confirm, validate or give legal effect to any project to which this subdivision applies if, prior to the commencement of judicial proceedings and in good faith and in reliance upon the issuance by a public agency of any lease, permit, license, certificate or other entitlement for use, substantial construction has been performed and substantial liabilities for construction and necessary materials have been incurred.

"(b) Section 21169 shall not operate to confirm, validate or give legal effect to any project which had been determined in any judicial proceeding, on or before the effective date of this section to be illegal, void or ineffective because of noncompliance with this division."

*supra, ante,* p. 257, where the identical argument was made, the contention must be rejected.

 Consolidated further contends, however, that despite the pendency of plaintiffs' mandate proceeding, the project was validated by the qualifying proviso of section 21170 that "Section 21169 shall operate to . . . validate . . . any project to which this subdivision applies if, prior to the commencement of judicial proceedings and in good faith and in reliance upon the issuance by a public agency of any lease, permit, license, certificate or other entitlement for use, substantial construction has been performed and substantial liabilities for construction and necessary materials have been incurred." Consolidated argues that the declarations show that it undertook construction of the proposed plan of development in reliance upon county approval of its application to rezone the property (approved Oct. 12, 1971) and expended some $220,000, exclusive of land acquisition costs, for engineering and architectural services, for construction and reconstruction of water wells, pumps, storage facilities, distribution lines and sewer lines, and for landscaping.

The difficulty with Consolidated's argument is that plaintiff's attack is upon the issuance of the conditional use permit and not the rezoning action. We would quite agree that the zone changes, though made without complying with the CEQA (which became effective Nov. 23, 1970) were validated by the qualifying proviso of section 21170. The defense of laches could without doubt also have been successfully invoked against an attack upon the rezoning action. (See *Concerned Citizens of Palm Desert, Inc.* v. *Board of Supervisors (Eagle Development Co.), supra, ante,* p. 257.) To the extent that Consolidated's proposed plan of development could have been validly carried out under the county zoning ordinance pursuant to the zone changes and without the conditional use permit, the project was validated. The conditional use permit, however, was not issued until November 21, 1972, and it cannot be determined from the declarations in support of the motion for summary judgment what sums, if any, were expended or incurred for construction and necessary materials between the date of its issuance and the commencement of these proceedings nine days later. Consequently, on the record before us, the contention that the conditional use permit was validated by the proviso of section 21170 cannot be sustained.

Even prior to the 1972 urgency amendment to the CEQA, the issuance of a conditional use permit was held to constitute a project requiring compliance with the CEQA. (*Friends of Mammoth* v. *Board of Supervisors, supra,* 8 Cal.3d 247, 262.) The act now makes it clear that it applies to

"the enactment and amendment of zoning ordinances, the issuance of zoning variances, the issuance of conditional use permits and the approval of tentative subdivision maps (except where such a project is exempt from the preparation of an environmental impact report pursuant to Section 21166)." (§ 21080.) Section 21166 provides that where an EIR has been prepared for a project pursuant to the act, no subsequent EIR shall be required unless either of the following occurs: "(a) Substantial changes are proposed in the project which will require major revisions of the environmental impact report. [¶] (b) Substantial changes occur with respect to the circumstances under which the project is being undertaken which will require major revisions in the environmental impact report."

Although sections 21080 and 21166 were added by the urgency amendment of 1972 and were not in effect at the time of issuance of the conditional use permit in question, they were obviously intended as clarifying amendments to the law. Thus, the validation of the project to the extent authorized by the zone changes did not exempt the issuance of the conditional use permit from the requirement of the act, if the permit authorized substantial changes in the project from that which was authorized by the zone changes or if it substantially changed the circumstances under which the project was to be undertaken from those existing under the zone changes. There is nothing in the record to show that the conditional use permit did not authorize or result in such changes or that if it did, the changes did not raise additional environmental issues.

We conclude that the contention that the project approved by the issuance of the conditional use permit was validated by sections 21169 and 21170 cannot be upheld.

The correctness of the ruling of the court below, therefore, turns on whether the county complied with the CEQA in connection with the issuance of the conditional use permit. We turn to that question.

## III

### Compliance With CEQA

Plaintiffs contend that the county failed to comply with the CEQA in two respects: (1) The notice of hearing before the board of supervisors on the application for the conditional use permit failed to apprise the public of the fact that a draft EIR was on file for public examination and comment and (2) the EIR was inadequate as a matter of law.

(a) *Adequacy of Notice of Hearing*

Plaintiff's main attack upon the validity of the conditional use

permit is that the notice of hearing on the application was deficient in failing to tell the public that a draft EIR had been prepared and filed and was available for public examination and comment.[7]

Plaintiffs cite no statutory authority for their contention that the notice of hearing should have included a notice that a draft EIR had been prepared and was on file with the board of supervisors. We find no such requirement either in the CEQA in force at the time the disputed actions were taken or in the act as amended by the urgency amendment of December 5, 1972. In fact, as noted in the State Guidelines for the implementation of the act as amended (Cal. Admin. Code, tit. 14, div. 6, ch. 3, adopted Feb. 7, 1973), the CEQA does not require public hearings in the environmental review procedure.[8] Although as amended in 1972, the

---

[7]The notice of hearing before the board of supervisors read as follows:

"NOTICE OF PUBLIC HEARING BEFORE THE BOARD OF SUPERVISORS OF RIVERSIDE COUNTY, CALIFORNIA, ON AN APPLICATION FOR A PERMIT TO ESTABLISH A PLANNED RESIDENTIAL DEVELOPMENT IN THE CATHEDRAL CITY-PALM DESERT DISTRICT

"NOTICE IS HEREBY GIVEN that a public hearing at which all interested persons will be heard, will be held before the Board of Supervisors of Riverside County, California, in the meeting room of said Board, at the Court House at 4050 Main Street, Riverside, California, on Wednesday, November 14, 1972 at 1:30 p.m., on the Application of Consolidated Land Investment Co., in Case No. 1450-E for a permit to establish a planned residential development and real estate sales office in Zone R-3-75 (General Residential, 75' height limit), R-2-6000 (Multiple Family, 6000 sq. ft. lot acres area/D.U.), R-5 (Open area combining zone residential developments), R-2-A (Limited Multiple Family Dwellings), and W-1 (Watercourse), on property located on both sides of Clancy Lane, easterly of the prolongation of Monterey Avenue (Palomino Drive), near Palm Palm [sic] Desert, in the Cathedral City - Palm Desert District and more particularly described as follows:

"A portion of Sections 8 and 17, T.5S, R.6E, S.B.B. & M.

"BY ORDER OF THE BOARD OF SUPERVISORS

"DATED: October 17, 1972.

"DONALD D. SULLIVAN, Clerk
"By: R. HAWORTH, DEPUTY"

[8]The State Guidelines, while noting that the act does not require formal public hearings at any stage of the environmental review·procedure, recognize the desirability of encouraging public participation and recommend public agencies adopting implementing procedures in response to the guidelines to make "provisions in their procedures for wide public involvement, formal and informal, consistent with their existing activities and procedures, in order to properly receive and evaluate public reactions, adverse and favorable, based on environmental issues." (Cal. Admin. Code, tit. 14, § 15164.)

The guidelines provide that a public hearing on the environmental impact of a project "should usually be held when the lead agency determines it would facilitate the purposes and goals of the CEQA and these Guidelines to do so"; that such public hearings "may be held in conjunction with and as a part of normal planning activities"; and that notice of such hearing "may be given *in the same form* and time as

CEQA provides that whenever a public agency has completed an EIR it must file a notice of completion of such report with the Secretary of the Resources Agency, the statute expressly provides: "Failure to file the notice . . . shall not affect the validity of a project." (§ 21161.)[9]

The notice of hearing in the case at bench met all statutory and local ordinance requirements.[10] It was given to all adjacent property owners and other interested persons and citizen groups; it gave notice of the time and place of the public hearing; it gave notice that the subject to be considered was Consolidated's application for a conditional use permit to establish a planned multiple residential development on its property; it gave a legal description of the property as well as its location by reference to the public streets bounding the property. The notice was sufficient to apprise any interested person of the matter to be considered by the board. *Friends of Mammoth* v. *Board of Supervisors, supra,* 8 Cal.3d 247, had been decided approximately two months before the hearing date. That decision, making it clear that the CEQA applied to private as well as public projects and that an EIR must be prepared and considered before any private project having a significant effect on the environment is approved by a public agency, was widely publicized throughout the state. Any interested person desiring to know whether a draft EIR had been prepared in connection with Consolidated's application for a conditional use permit would have discovered by a simple inquiry to the board of supervisors that

---

notice for other regularly conducted public hearings of the public agency"; and that a "public agency may include, in its implementing procedures, procedures for the conducting of public hearings pursuant to this section, which procedures may be consistent with already existing hearing and notice requirements of the public agency for regularly conducted legislative, planning and other proceedings." (Cal. Admin. Code, tit. 14, § 15165; italics added.)

[9]Public Resources Code section 21161 provides: "Whenever a public agency has completed an environmental impact report, it shall cause a notice of completion of such report to be filed with the Secretary of the Resources Agency. The notice of completion shall briefly identify the project and shall indicate that an environmental impact report has been prepared. Failure to file the notice required by this section shall not affect the validity of a project."

[10]Government Code section 65905 provides: "Whenever an application for a variance, or a conditional use permit or other permit, for revocation or modification of same or an appeal from the action taken thereon, is submitted to the body or person charged with conducting a public hearing thereon, notice of hearing shall be given by notice through the United States mails, with postage prepaid using addresses from the last equalized assessment roll, or alternatively, from such other records of the assessor or the tax collector as contain more recent addresses in the opinion of said body, or by both publication in a newspaper of general circulation in accordance with Section 65854 and posting said notice in conspicuous places close to the property affected. Procedure for mailing or posting of said notices shall be governed by the provisions of the local ordinance."

a draft was on file and available for public examination and comment. The report had been on file with the board and the county planning department since October 17, 1972.

As sole support for the contention that the notice of hearing was inadequate for failure to make reference to an EIR on file, plaintiffs cite the following statement extracted from footnote 8 of *Friends of Mammoth:* "The impact report must be specially prepared in written form before the governmental entity makes its decision. This will give members of the public and other concerned parties an opportunity to provide input both in the making of the report and in the ultimate governmental decision based, in part, on that report." (8 Cal.3d at p. 263, fn. 8.)

Footnote 8 of *Friends of Mammoth* is an explanatory note to the statement in the body of the opinion that the legislative objective of the CEQA could not be effectuated by "vague or illusory assurances by state and local entities that the effect of a project on the environment had been 'taken into consideration.' " (8 Cal.3d at p. 263.) Defendants in *Friends of Mammoth* had advanced the argument that although a formal written EIR had not been prepared in that case, there had been substantial compliance with the CEQA in that the board of supervisors had considered the effect of the project on adjacent property, traffic, water and sewage facilities, fire and police protection, snow removal and the ecology in general. In footnote 8, the court responded to that contention by stating that oral testimony followed by conclusionary statements that environmental factors had been considered could not constitute substantial compliance with the EIR requirement. It was in this context that the court stated that the report must be specially prepared in written form before the public agency makes its decision. In the case at bench, a draft EIR was in written form and was available for public inspection at the office of the board of supervisors and the county planning department approximately a month before the date of the public hearing.

We conclude that plaintiffs' contention that the failure to give public notice of the preparation and filing of the draft EIR rendered the conditional use permit invalid is without merit.

IV

ADEQUACY OF THE EIR

■ Plaintiffs' final attack on the conditional use permit, and inferentially on the judgment of the court below, is that the EIR was inadequate

as a matter of law. Plaintiffs make a generalized attack that the report is uncritical and that it fails to deal adequately with the impact of the project on air quality and water supply and the impact of four and five-story apartment buildings on the "low profile standard" of the desert communities.

The draft EIR which Consolidated caused to be prepared consists of 106 pages plus exhibits, and the administrative record contains the evaluation of the draft report by the interim committee and various county agencies, as well as the transcript of the oral proceeding before the board of supervisors. Plaintiffs, however, have not provided us with references to specific pages of the draft report or to specific portions of the administrative record to support their contention concerning the inadequacy of the EIR.

Although the draft EIR was prepared by Consolidated's consultant, the board of supervisors referred the report to the county interim committee and the planning department for their independent evaluation, analysis and report. The county planning department made its evaluation and analysis of the draft EIR and reported to the interim committee and the board of supervisors that it "adequately presents" the environmental impact which can be associated with the project, with two minor exceptions: (1) The section dealing with alternatives did not include a discussion of feasible agricultural uses and (2) the statement that the traffic impact would be low because "Monterey Street" rather than "Clancy Street" will be used for major vehicular traffic depended on the timeable for completion of "Monterey Street," and if construction or major occupancy occurred before completion of that street there would be a discernible traffic impact on "Clancy Street." The interim committee, after reviewing the planning department report, made its written report to the board of supervisors stating that it concurred in the findings of the draft EIR which Consolidated had caused to be prepared. A separate written report was filed with the board of supervisors by the air pollution control district which stated that it had reviewed the draft EIR in depth and found that there would be no significant impact on the Coachella Valley environment.

█ In their petition, plaintiffs alleged as one of the grounds of attack upon the validity of the EIR that the report prepared by Consolidated was not concurred in, adopted, or modified by the county. On this appeal, plaintiffs appear to have abandoned that attack. In any event, as noted above, the record discloses that the findings of Consolidated's draft EIR were, after independent evaluation and analysis, adopted by the county with certain qualifications. The final EIR consisted of Consolidated's draft to-

gether with written reports of the county interim committee, the county planning department, and the air pollution control district. There was thus compliance with the statutory requirement that the EIR be prepared by the public agency. (§ 21151.)[11]

██ Nor have plaintiffs substantiated their contentions that the EIR was inadequate as a matter of law in failing to discuss all of the environmental impact which will result from the development. ██ Where concerned public or private organizations or individuals bring to the attention of the responsible public agency adverse environmental impacts which they contend will result from the project, the EIR should set forth those contentions and objections. (*Environmental Defense Fund, Inc.* v. *Coastside County Water Dist.*, 27 Cal.App.3d 695, 707 [104 Cal.Rptr. 197].) ██ In the instant case, however, plaintiffs did not submit any evidence to the court below, by counteraffidavit or otherwise, showing that the EIR ignored any bona fide opposition to the project on environmental grounds, either by public agencies or private individuals or groups. Moreover, contrary to plaintiffs' assertions, the EIR does note certain objectionable aspects of the project and refers to objections voiced by local residents on environmental grounds, including the impact of the project on population density, the impact stemming from the height of the proposed structures, and the impact on the water supply. While we do not commend the draft EIR prepared by Consolidated as a model of objectivity, we cannot say the draft and the reports of the county agencies based upon their independent evaluations and analyses of the draft were inadequate as an EIR as a matter of law.

### DISPOSITION

On the basis of the uncontradicted evidence before it, the court below properly concluded that there were no triable issues of fact and that plaintiffs' action had no merit.

Judgment is affirmed.

Kerrigan, Acting P. J., and Kaufman, J., concurred.

A petition for a rehearing was denied April 18, 1974, and the petition of the plaintiffs and appellants for a hearing by the Supreme Court was denied July 25, 1974. Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.

---

[11]The State Guidelines provide that where a project is to be carried out by a nongovernmental person, the public agency may require such person to submit data and information to enable the public agency to prepare the EIR, and such information may be transmitted in the form of a draft EIR. (Cal. Admin. Code, tit. 14, § 15085.) If information is submitted in the form of a draft EIR, the public agency may not use the draft EIR as its own "without independent evaluation and analysis." (Cal. Admin. Code, tit. 14, § 15061, subd. (b).)