[No. B053286. Second Dist., Div. Two. Aug. 5, 1991.]

FRIENDS OF LA VINA et al., Plaintiffs and Respondents, v. COUNTY OF LOS ANGELES, Defendant and Appellant; CANTWELL-ANDERSON, INC., et al., Real Parties in Interest and Appellants.

## COUNSEL

De Witt W. Clinton, County Counsel, Charles J. Moore and Richard D. Weiss, Deputy County Counsel, Hill, Farrer & Burrill, Darlene Fischer Phillips and Dean E. Dennis for Defendant and Appellant.

Hamilton & Samuels, Paul Hamilton and Karen J. Lee for Real Parties in Interest and Appellants.

James K. Hahn, City Attorney (Los Angeles), Patricia V. Tubert and Curt Holguin, Deputy City Attorneys, Louise H. Renne, City Attorney (San Francisco), Judith Boyajian and Melba Yee, Deputy City Attorneys, Nossaman, Guthner, Knox & Elliott, Alvin S. Kaufer, Winfield D. Wilson, Kenneth B. Bley and Cox, Castle & Nicholson and Kenneth B. Bley as Amici Curiae on behalf of Defendant and Appellant and Real Parties in Interest and Appellants.

Proskauer, Rose, Goetz & Mendelsohn, Robert V. Kuenzel, Elizabeth F. Skolar, Nicholas P. Connor and Deborah S. Bucksbaum, for Plaintiffs and Respondents and as Amici Curiae on behalf of Plaintiffs and Respondents.

Hall & Phillips, Carlyle W. Hall, Jr., Ann Carlson, Carl H. Moor, Georganne Thomsen and Robyn Prud'homme-Bauer as Amici Curiae on behalf of Plaintiffs and Respondents.

## OPINION

**FUKUTO, J.**—Defendant County of Los Angeles (County), and real parties in interest Cantwell-Anderson, Inc., and its joint venturer Southwest Diversified, Inc. (applicants), appeal from a judgment granting a writ of mandate requiring that County's approval of applicants' project be set aside and work suspended pending preparation of a proper environmental impact report (EIR) in compliance with the California Environmental Quality Act (CEQA).[1] The rationale of the judgment was that CEQA does not permit a public agency, charged by sections 21082.1 and 21151 with preparing an EIR, to generate it by requiring the applicant's consultant to draft the analytical documentation. Because we find the trial court's construction of CEQA's "preparation" requirement at odds with the statute, the Guidelines, and prior judicial applications, we shall reverse the judgment and remand the case for redetermination. Appellants' further appeals from a postjudgment order denying reconsideration will be dismissed as moot.[2]

### FACTS

In 1986 Cantwell-Anderson applied to the County for approval of a specific plan, rezoning, and general (community) plan amendment, to permit residential and private school development of 220 largely open acres in Altadena. Determining that an EIR would be required, the County's department of regional planning (Department), following established County procedure, directed Cantwell-Anderson to engage a private consultant to prepare the EIR documentation (the contractor).

The contractor submitted an initial draft of the draft EIR required by Guidelines sections 15084-15087 in June 1987, and the County released the

---

[1] Public Resources Code, division 13, sections 21000-21177, hereafter cited by section number alone. CEQA's regulatory guidelines, promulgated by the Resources Agency under sections 21083 and 21087 and codified at title 14, chapter 3, sections 15000-15387 of the California Code of Regulations, are referred to and cited as Guidelines.

[2] Although the judgment did not dispose of a conjoined cause of action for declaratory relief, we have jurisdiction over the appeals under the qualification to the one-judgment rule discussed in *Highland Development Co.* v. *City of Los Angeles* (1985) 170 Cal.App.3d 169, 179 [215 Cal.Rptr. 881].

draft EIR for comment by other agencies in November. In March 1988, the Department distributed a volume containing these comments and the County's responses to them, which the contractor had initially drafted. The draft EIR and addendum then were released to the public for comment, and in March 1989 the County issued a second volume of responses, to these comments, required by Guidelines section 15088. The contractor also drafted these responses.

Between July 1988 and May 1989, the County's regional planning commission held five public hearings on the application, eliciting some of the public comments just referred to. The planning commission then voted to recommend approval to the board of supervisors, but modified the proposal, by reducing the number of residences from 360 to 274 and replacing the private school site with a park use.

The board of supervisors (Board) considered the application on three occasions, in September, November, and December 1989. The Board simultaneously considered the final EIR, consisting of the draft EIR, the responses to comments, and a final volume which included proposed findings about the environmental issues raised in the review process, closely tracking the contractor's drafts. In response to public complaints about the EIR's contents during the hearings, the Board required various County departments to respond. These responses, prepared without contractor involvement, generally endorsed the EIR. The Board approved the application by a four-to-zero vote, adopting the planning commission's reduction of residential density but reserving ultimate disposition of the school site for later consideration.

Plaintiffs, an ad hoc organization of residents who had consistently opposed the project and challenged the EIR, then commenced the present action, for writ of mandate and declaratory relief. Plaintiffs challenged the validity of the project approval and EIR on numerous grounds, including that the County had improperly delegated preparation of the EIR to the contractor. In support of this contention, plaintiffs relied on the administrative record and on declarations that the County's files contained little County-generated documentation concerning the project.

After several rounds of briefing, the County filed declarations by Kerwin Chih, formerly the senior planning assistant in the Department responsible for processing the EIR, and Eric Ruby, the contractor's environmental services director. They described the draft EIR's development by Department review and direction of revisions, whereby the document underwent three more drafts after initial submission by the contractor. Ruby attested to further County review of the draft responses to comments and final EIR.

Plaintiffs objected to admission of these declarations, but the court did not expressly rule on those objections.

Instead, the court granted a writ of mandate, holding that CEQA—principally section 21082.1—did not permit an applicant's consultant to draft the EIR. The court concluded its lengthy opinion elaborating this determination: "This ruling is based upon the CEQA statute and guidelines, the corresponding case law, and general principles of conflict of interest."

Applicants moved to amend the judgment and writ and to reconsider the remedy. They asked either that the ruling be made prospective and inapplicable to their project, or that the County be required to expedite preparation of the new EIR. The court denied the motion but clarified its decision, stating that an agency could treat an applicant's consultant's draft EIR only as an item of information for the agency's own preparation of the EIR. County and applicants have appealed from both the judgment and the order denying reconsideration.[3]

## DISCUSSION

■■■ The decision below purported to expound and apply the legal truism that under CEQA an EIR must be "prepared directly by, or under contract to, a public agency," not by a private applicant or its agent. (§ 21081.2; accord, §§ 21100 [state agencies], 21151 [local agencies].) According to the court, this requirement means that an EIR must be written and composed by the agency, so that an EIR whose constituent documents are drafted for the agency by the applicant's consultant is necessarily invalid, without regard to how much agency input, direction, evaluation, and independent judgment went into it. Although the merits of this approach as a matter of policy may be debatable, the court's interpretation was erroneous as a legal matter, because it conflicts with CEQA, the Guidelines, and all relevant case law. Those controlling sources consistently teach that an agency may comply with CEQA by adopting EIR materials drafted by the applicant's consultant, so long as the agency independently reviews, evaluates, and exercises judgment over that documentation and the issues it raises and addresses.

Section 21082.1, the section most heavily relied on by the trial court and plaintiffs, itself refutes the notion that an EIR must be the product of the

---

[3]We grant the parties' requests for judicial notice on which ruling was deferred, except for plaintiffs' requests to notice evidence and other materials from an unrelated lawsuit against the County. (See Evid. Code, § 350; *Cota* v. *County of Los Angeles* (1980) 105 Cal.App.3d 282, 293-294 [164 Cal.Rptr. 323].)

agency's own authorship, to the exclusion of the applicant or its consultant.[4] In the same breath as it requires agency "preparation" of the EIR, the statute specifically authorizes the agency not only to consider outside comments and information but to include them in the EIR. (Accord, Guidelines, §§ 15084, subds. (c), (d)(3) [draft EIR], 15132, subd. (b) [final EIR].) Moreover, the history of the bill that enacted section 21082.1 reflects that after the "preparation" language alone was proposed, the Assembly deleted it, and then reinstated and approved it only with the addition of the further language authorizing outside input. (Assem. Amend. to Assem. Bill No. 2679 (1975-1976 Reg. Sess.) § 9.6, Apr. 29, June 10, Aug. 6, and Aug. 16, 1976.) Thus, the primary "preparation" statute authorizes and virtually requires that the EIR be "prepared" using outside submissions, not merely agency draftsmanship.

 The Guidelines, constituting authoritative interpretive prescriptions of CEQA practice and procedure, also validate documentary reliance on an applicant's consultant.[5] Guidelines section 15084 commences by repeating the agency preparation requirement of section 21082.1, with respect to draft EIRs. The section proceeds, in subsection (d), to set forth five permissible methods of such agency preparation. One of these is, "Accepting a draft prepared by the applicant, a consultant retained by the applicant, or any other person." (Guidelines, § 15084, subd. (d)(3); cf. Guidelines, § 15084, subd. (c).) The regulation goes on to add, however, "Before using a draft prepared by another person, the lead agency shall subject the draft to the agency's own review and analysis. The draft EIR which is sent out for public review must reflect the independent judgment of the lead agency. The lead agency is responsible for the adequacy and objectivity of the draft EIR." (Guidelines, § 15084 subd. (e).) In short, this

---

[4]Section 21082.1 provides in full: "Any environmental impact report or negative declaration prepared pursuant to the requirement of [CEQA] shall be prepared directly by, or under contract to, a public agency. [¶] This section is not intended to prohibit, and shall not be construed as prohibiting, any person from submitting information or other comments to the public agency responsible for preparing an environmental impact report or negative declaration. The information or other comments may be submitted in any format, shall be considered by the public agency, and may be included, in whole or in part, in any report or declaration."

At oral argument, plaintiffs stressed that the section uses the word "directly" in referring to one form of permissible preparation. That word does not enlighten the issue: "direct" agency preparation simply distinguishes itself from the alternative of subcontracting the function.

[5]The Guidelines purport to require compliance by all public agencies. (Guidelines, §§ 15000, 15020.) Although yet to decide "whether the Guidelines are regulatory mandates or only aids to interpreting CEQA," the Supreme Court has declared that "[a]t a minimum, however, courts should afford great weight to the Guidelines except when a provision is clearly unauthorized or erroneous under CEQA." (*Laurel Heights Improvement Assn.* v. *Regents of University of California* (1988) 47 Cal.3d 376, 391, fn. 2 [253 Cal.Rptr. 426, 764 P.2d 278] [hereafter *Laurel Heights*].) None of the parties has challenged any of the Guidelines cited herein as being thus erroneous.

Guideline affirmatively defines and endorses "preparation" of a draft EIR by precisely the method the County and applicants contend was followed in this case.

The preparation method prescribed in the foregoing Guidelines allows for an agency to enlist the initial drafting and analytical skills of an applicant's consultant, subject to the requirement that the agency apply independent review and judgment to the work product before adopting and utilizing it. This methodology appears to be common in California (see 1 Cal. Environmental Law and Land Use Practice (1991 rev.) § 22.03[3], p. 22-23); several substantial municipal amici in this case have attested to using it routinely. More important, a consistent series of appellate decisions have endorsed local agencies' resort to applicants' consultants in the preparation of both draft and final EIRs, subject to the qualification of independent agency involvement and judgment, as against charges of unlawful delegation.

In *Concerned Citizens of Palm Desert, Inc.* v. *Board of Supervisors* (1974) 38 Cal.App.3d 272 [113 Cal.Rptr. 338], decided under section 21151 before enactment of section 21082.1, the applicant's consultant prepared a draft EIR; after review by a county department and committee, which evoked two disagreements, the draft was incorporated into the final EIR together with the local bodies' reports. Citing the statute and the precursors of Guidelines section 15084, the court held that independent evaluation and modified adoption of the applicant's draft constituted "compliance with the statutory requirement that the EIR be prepared by the public agency." (38 Cal.App.3d at pp. 287-288.)

This interpretation of the preparation requirement was reiterated in *Foundation for San Francisco's Architectural Heritage* v. *City and County of San Francisco* (1980) 106 Cal.App.3d 893 [165 Cal.Rptr. 401], which also rejected a claim that preparation of the EIR had been unlawfully delegated to the applicant's consultant. The court articulated the test as follows: "The EIR is not fatally undermined by the direct participation of the developer and his experts in the underlying environmental and other studies. As the public agency must, of necessity, work closely with the permit applicant, CEQA does not prohibit the applicant from providing the data, information and reports required for the preparation of the EIR. CEQA merely requires that the agency independently perform its reviewing, analytical and judgment functions and to participate actively and significantly in the preparation and drafting process." (*Id.* at p. 908.)

Finally, in *City of Poway* v. *City of San Diego* (1984) 155 Cal.App.3d 1037 [202 Cal.Rptr. 366], the court stated the rule to be that "[w]hile [the agency] may require [the applicant] to submit an EIR, the document may not be

adopted by [the agency] as its own without independent evaluation or analysis and must reflect [the agency's] independent judgment." (*Id.* at p. 1042.) Under this test, the court approved an EIR which the agency had received from an applicant's consultant and had adopted after changing one word and adding eight pages of introduction.

The foregoing cases consistently confirm that the "preparation" requirements of CEQA (§§ 21082.1, 21151) and the Guidelines turn not on some artificial litmus test of who wrote the words, but rather upon whether the agency sufficiently exercised independent judgment over the environmental analysis and exposition that constitute the EIR. Like section 21082.1 and the Guidelines, the cases recognize that preparation of an EIR is not a solitary, ruminative process but an inquisitive, cooperative one, in which the applicant and its experts naturally can and will be heavily involved, perhaps to the point of initially drafting the text. The trial court's erection of a barrier to such involvement appears to be directly opposed to the statute as heretofore construed.[6]

■ Plaintiffs and amicus curiae Sierra Club nonetheless contend that contractor drafting of the responses to comments, which principally convert the draft EIR into the final EIR, cannot be tolerated if CEQA's promise and prescription of agency EIR preparation are to be followed. In this connection plaintiffs rely upon Guidelines sections 15088, subdivision (a) and 15089, subdivision (a), which set forth the duty of the lead agency to respond to comments and prepare the final EIR, as well as *People* v. *County of Kern* (1974) 39 Cal.App.3d 830 [115 Cal.Rptr. 67] and *People* v. *County of Kern* (1976) 62 Cal.App.3d 761 [133 Cal.Rptr. 389] (*Kern II*), which disapproved an EIR, first for failure to include any responses to comments at all and then because, on remand, the agency provided substantively inadequate responses, adopted wholesale from a resolution written by the applicant's lawyer.

We are not unsympathetic to the policy concerns that an agency be required wholeheartedly, thoughtfully, and actively to prepare responses to

---

[6]*Sundstrom* v. *County of Mendocino* (1988) 202 Cal.App.3d 296 [248 Cal.Rptr. 352], heavily urged by plaintiffs and the trial court as supporting the latter's ruling, does not. In that case the agency adopted not an EIR but a negative declaration of significant environmental effects (§ 21080, subd. (c)). It then appended to the project approval requirements for further environmental assessments, including studies to be conducted by the applicant and approved by an inferior agency. The court disapproved the agency's reversal of CEQA's prescribed sequence of environmental evaluation and project approval, as well as the combined delegation of study and approval to the applicant and a lower agency. In the latter connection, the court quoted section 21082.1's preparation requirement, and Guidelines section 15084, subdivision (e)'s requirement of independent agency judgment when adopting a draft EIR from an applicant's submission. (202 Cal.App.3d at p. 307.) *Sundstrom* thus merely restates some of the statutory and regulatory authority with which our analysis began.

comments on its draft EIR. But those concerns simply do not engender legal interdiction of an applicant's consultant's drafting the written responses. Plaintiffs' authorities do not dictate such a rule: the Guidelines' general terms prescribe no bar, and the *Kern II* case, which has elsewhere been viewed as presenting an exceptional factual situation (e.g., *City of Poway* v. *City of San Diego, supra,* 155 Cal.App.3d at p. 1042), itself used the independent judgment rule discussed above as a mainstay of its analysis. (*Kern II, supra,* 62 Cal.App.3d at p. 775.) In short, in accordance with consistent practice and judicial application, the independent review, analysis and judgment test, not the proposed physical draftsmanship test, applies to the EIR as a whole, including responses to comments.[7]

■ The trial court's ruling derived in large measure from what the court termed "general principles of conflict of interest," as applicable to applicants and their consultants. In so ruling, the court assumed an unwarranted role. The issue in this case is compliance with CEQA. To the extent policing of specific conflicts of interest might accurately be perceived as a legislative provision or purpose of CEQA, it could be pursued. But not otherwise. Except where the law clearly provides rules for identification and rectification of what might be termed conflicts of interest, that is a legislative not a judicial function. (Cf. *Woodland Hills Residents Assn., Inc.* v. *City Council* (1980) 26 Cal.3d 938, 944-946 [164 Cal.Rptr. 255, 609 P.2d 1029]; *Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1989) 214 Cal.App.3d 1348, 1364-1366 [263 Cal.Rptr. 214].)

■ Because the trial court erred at the threshold in identifying the standard under which to evaluate the County's preparation of the EIR, that issue must be reconsidered under the proper standard, discussed above. Although the parties invite us to make that evaluation here and now, we believe that would be procedurally inappropriate, for the following reasons.

■ CEQA separately defines the scope of judicial review of agency actions subject to administrative mandamus under Code of Civil Procedure section 1094.5 (§ 21168) and those reviewable by traditional mandamus under Code of Civil Procedure section 1085 (§ 21168.5). The substantive standard of review "is essentially the same under either section, i.e., whether substantial evidence supports the agency's determination." (*Laurel Heights, supra,* 47 Cal.3d at p. 392, fn. 5.) However, the range of admissible evidence subject to review differs between the two types of proceedings. Whereas in

---

[7]Citing federal authorities, plaintiffs also urge that an agency's use of consultant-supplied materials must include "independent verification" of their contents. But the federal regulation upon which plaintiffs rely (40 C.F.R. § 1506(a)) closely resembles Guidelines section 15084 subd. (e)'s restatement of the independent review, analysis, and judgment rule. We see no basis for decreeing a different requirement.

administrative mandamus the evidence is generally confined to the administrative record (see Code Civ. Proc., § 1094.5, subd. (e)), in cases subject to traditional mandamus under section 21168.5 additional relevant evidence may be introduced for consideration. (*No Oil, Inc.* v. *City of Los Angeles* (1974) 13 Cal.3d 68, 79, fn. 6 [118 Cal.Rptr. 34, 529 P.2d 66]; *Sierra Club* v. *Gilroy City Council* (1990) 222 Cal.App.3d 30, 40 [271 Cal.Rptr. 393]; 1 Cal. Environmental Law and Land Use Practice, *supra*, § 23.04[3], pp. 23-15—23-16.)

■ This difference has direct, practical consequences for the present case. The County's actions under review—approval of a specific plan and attendant rezoning and general plan amendment—were legislative not adjudicative, and they therefore are subject to traditional not administrative mandamus. (*Yost* v. *Thomas* (1984) 36 Cal.3d 561, 570 [205 Cal.Rptr. 801, 685 P.2d 1152]; *Sierra Club* v. *Gilroy City Council, supra*, 222 Cal.App.3d at p. 39.) Accordingly, the County's declarations by Messrs. Chih and Ruby, describing County review and revision of the contractor's EIR documentation, were not inadmissible, as plaintiffs contended, by virtue of Code of Civil Procedure section 1094.5, subdivision (e). Nor were those declarations subject to exclusion because appellants had previously objected to plaintiffs' discovery requests for production of comparable evidence. (See Code Civ. Proc., § 2031, subd. *l.*)

However, proper resolution of the case demands that plaintiffs be allowed to respond to these declarations, which were filed just before the hearing below. In this connection, the County's own discovery objection that relevant evidence was limited to the administrative record also was fallacious; and having introduced its declarations about how the EIR was prepared, the County may not claim that further objective evidence of that process is irrelevant. On remand, subject to the trial court's discretion and to appropriate rebuttal, plaintiffs should be allowed to elicit and introduce such further evidence as will inform the decision whether the County complied with the EIR preparation requirement. Moreover, remand is also required to permit resolution, if necessary, of the remaining claims in plaintiffs' petition.

■ We observe in conclusion that the traditional interpretation of CEQA's EIR preparation requirement, which we adhere to while disapproving the new test the trial court adopted, itself follows the fundamental imperative that CEQA "be interpreted in such manner as to afford the fullest possible protection to the environment within the reasonable scope of the statutory language." (*Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 259 [104 Cal.Rptr. 761, 502 P.2d 1049].) Implicit in the requirement that the agency exercise independent review, analysis, and judgment

when using EIR materials submitted by an applicant's consultant is a heavy demand for independence, objectivity, and thoroughness. Moreover, this standard pursues the prescription that an EIR be "a document of account-ability." (*Laurel Heights, supra*, 47 Cal.3d at p. 392.) That the parties have vigorously debated here the comparative benefits and detriments of this phase of CEQA as interpreted to date only confirms that its revision or improvement is not for the courts. (See *Citizens of Goleta Valley* v. *Board of Supervisors* (1990) 52 Cal.3d 553, 564 [276 Cal.Rptr. 410, 801 P.2d 1161].)[8]

## DISPOSITION

The judgment is reversed. The appeals from the order denying the post-judgment motion are dismissed as moot. The parties shall bear their own costs.

Nott, J., concurred.

**GATES, Acting P. J.**—I respectfully dissent.

One person may never adequately represent conflicting interests. Whether expressed in classic or colloquial form, few verities have been more oft reproven over the centuries.[1] Consequently, our Legislature has proclaimed in clear, unambiguous language that:

"Any evironmental impact report or negative declaration pursuant to the requirement of this division *shall be prepared directly by, or under contract to, a public agency.*" (Pub. Resources Code, § 21082.1.)

It is not contended, nor could it be, that this commandment was honored here. In this instance the applicant's agent not only prepared the initial draft environmental impact report (EIR), he was permitted to make all required responses to any concerns expressed in order that the final EIR, which he also composed, would satisfy his principal's desires. When any person's future income is dependent solely upon his ability to achieve success for those who retain his services, no matter how capable or honorable may be his intentions, his conflicting interests are so patent that the statutory pro-scription forbidding public agencies from casting him in such a role would hardly seem necessary.

---

[8]We exceptionally acknowledge the lucidness of the briefs in this case.

[1]"No man can serve two masters: for either he will hate the one, and love the other; or else he will hold to the one, and despise the other." (Matthew 6:24.) "Tell me whose food you eat and I will tell you whose song you sing." (Folk aphorism.)

No derivative public benefit from this practice has been suggested. There are no resultant cost savings and, of course, any and all input from the applicant's agent in aid of his client's position is already expressly authorized by the second paragraph of Public Resource Code section 21082.1.

I gravely fear that by reversing this judgment and thereby allowing Los Angeles County[2] and certain other public agencies throughout the state to continue to operate in this forbidden fashion, we will produce an effect that extends far beyond this particular project. Each year our state and local ballots are increasingly filled with initiatives and referendums manifesting the public's dissatisfaction with the conduct of its governmental officials. One may only speculate how much more their disillusionment and understandable cynicism will be increased upon learning that those authorities who control the very environment in which we live and raise our families need not even retain neutral experts to supply the information necessary to enlighten the affected citizenry or to assist the officials in preparing the materials prerequisite to any well-considered decision.

However, I certainly have no wish to delay this particular applicant's project if, as my minority position would indicate, my views are erroneous. Therefore, I shall not attempt to compose an extended legal analysis but will merely adopt by way of an appendix, the trial court's statement of decision which I find both correct and persuasive.

Respondents' petition for review by the Supreme Court was denied October 24, 1991.

---

[2]Ironically, the county's own environmental document reporting procedures and guidelines mirror the state's dictate in this regard by explicitly declaring in section 602, subdivision D, that "A Draft EIR shall be prepared *by or under contract to the lead county agency* . . . ." (Italics added.) Although provision is also made for the lead County agency to require the applicant to provide necessary data to assist it in its work, even in the form of a draft EIR, no such proviso is made for the final EIR. That is, subsection I states: "After evaluating the comments from those who reviewed the Draft EIR, a Final EIR *shall be prepared by the lead County agency.* The responses shall describe the disposition of significant environmental issues raised and shall be based on factual information." (Italics added.)

APPENDIX

"*Writ of Mandate Granted.*

"Pursuant to PRC 21168.9 ('Public agency' not in compliance with article [CEQA]; court's powers and duties), a writ of mandate is granted directing respondent to set aside its decision of December 26, 1989, approving Zone Change Case No. 87-044, Compound Plan No. 002-89 and Specific Plan No. 2, and its certification of the Environmental Impact Report in connection therewith; and further directing respondent to suspend all activity which could result in any change or alteration to the physical environment until such time as respondent has complied with the requirements of CEQA in accordance with the specifications stated below in compliance with PRC 21168.9(b).

"1. It is clear that the purpose of CEQA is to protect the environment. *See, e.g.* PRC 21000 21001. The EIR has often been described as the 'heart' of CEQA; *see, e.g., County of Inyo v. Yorty*, 32 CA3 795, 810 (1973), *Laurel Heights Improvement Assn. v. Regents*, 47 C3 376, 392 (1988), or as an 'environmental "alarm bell"' whose purpose is to alert the public and its responsible officials to environmental changes before they have reached ecological points of no return'; *see, e.g., Laurel Heights* at 392. *See also* PRC 21002.1 (purpose of EIR to identify significant environmental effects of project, alternatives to project). All the appellate law which teaches that CEQA is intended to 'afford the fullest possible protection to the environment within the reasonable scope of the statutory language', *Friends of Mammoth*, 8 C3 247, 259 (1972), is not reviewed here, but yet provides the starting point for analysis of the requirements of the statute.

"2. The first paragraph of PRC 21082.1, codified in the 'General' chapter of CEQA, reads as follows:

" 'Any environmental impact report or negative declaration prepared pursuant to the requirement of this division *shall* be prepared directly by, or under contract to, a public agency.' (emphasis added).

"The 'division' is Division 13 of the PRC, which is CEQA.) PRC 21082.1 goes on to provide in its second paragraph that 'any person' may submit information or comments to 'the public agency responsible for preparing an environmental impact report or negative declaration' and that such information or comments may be 'in any format.' Presumably in response to this 'any format' provision, the Guidelines allow a developer or his consultant to prepare a *draft* EIR, as discussed below. There is nothing in the second paragraph of PRC 21082.1, however, which creates a permissible third alternative method for preparation of a final EIR in addition to 1) by the public agency itself, or 2) by an entity which has contracted to perform this service *for the public agency.* These provisions are mandatory ('shall').

"3. The first paragraph of PRC 21100, codified in the 'State Agencies, Boards and Commissions' chapter of CEQA, reads in pertinent part as follows:

" 'All state agencies, boards, and commissions *shall* prepare, or cause to be prepared *by contract . . .* an environmental impact report on any project they propose to . . . approve which may have a significant effect on the environment.' (emphasis added).

"These provisions are mandatory ('shall'). They have no direct application here, since here the lead agency is a local agency (see below). It is noteworthy, however, that the CEQA language is throughout consistent in this regard.

"4. The first paragraph of PRC 21251, codified in the 'Local Agencies' chapter of CEQA, reads in pertinent part as follows:

" 'All local agencies *shall* prepare, or cause to be prepared *by contract . . .* an environmental impact report on any project they propose to . . . approve which may have a significant effect on the environment.' (emphasis added).

"These provisions are mandatory ('shall'). These provisions apply to respondent as a local agency.

"5. CEQA is rather clear that a public agency charged with the responsibility of preparing an EIR may do so in only one of two permissible ways: the EIR may be prepared by the public agency itself, or the EIR may be prepared under contract to the public agency. While

'any person' may submit information or comments, there is no provision for delegating the responsibility for EIR preparation to the agent of the very private applicant seeking approval of a project. This is not surprising. As discussed further below, it would be quite anomalous for CEQA, a statute designed to protect the environment, to delegate the very proponent of a proposed project the duty to generate the very 'alarm bell' that might result in rejection of the proposal.

"6. The Guidelines are of course subordinate to the these statutory provisions, but they are not necessarily inconsistent. It is noteworthy that while Guideline 15084(d)(3) does purport to allow a *draft* EIR to be prepared by the applicant or the applicant's consultant (because, presumably, this is information in 'any format'), Guideline 15089 clearly states: 'The lead agency shall prepare a final EIR before approving the project.' There is no provision in Guideline 15089 ('Preparation of Final EIR') allowing the *final EIR* to be prepared by the applicant or the applicant's agent. Guideline 15088 states that the 'lead agency shall' evaluate and respond to comments and revise or add to the draft EIR to produce a final EIR. Even the Guidelines, which both sides acknowledge to be subordinate to the statute, do not provide for the applicant to prepare the final environmental critique of his own project, this 'alarm bell' required for the purpose of alerting 'the public and its responsible officials to environmental changes before they have reached ecological points of no return.' *Laurel Heights* at 392. It would be quite remarkable for CEQA to ask the private applicant (or, more remarkable still, the private applicant's paid consultant) to find environmental reasons why the applicant's own project should be rejected.

"7. Except for *City of Poway v. City of San Diego,* 155 CA3 1037 (19840, discussed below, no one who has written on CEQA seems to have contemplated the prospect that a developer's own evaluation of his own project might constitute compliance with CEQA. In *Laurel Heights,* for example, Justice Eagleson wrote:

" 'Under CEQA, the public is notified that a draft EIR is being prepared (§§ 21092 and 21092.1), and the draft EIR is evaluated in light of comments received. (Guidelines, §§ 15087 and 15088.) *The lead agency then prepares a final EIR incorporating comments on the draft EIR and the agency's responses to significant environmental points raised in the review process.* (Guidelines, §§ 15090 and 15132, subds. (b)-(d).)' (emphasis added).

"Most other materials written on CEQA are also written from the express or implied perspective that it is the statutory duty of the public agency to prepare the final EIR. *See, e.g.,* CEB Advanced Real Property Series, 'Mandate Proceedings Under the California Environmental Quality Act' (October/November 1987) ('CEQA requires preparation of an environmental impact report (EIR) by a state or local agency. . .'); 'California Environmental Law Handbook' (4th Ed.) (Government Institutes, Inc.) ('The lead agency has the responsibility for preparing the EIR, but preparation costs are typically funded by the applicant'); 'Primer on Environmental Law in California' (California Department of Justice, Feb. 1988) (CEQA applies to private agencies, not private entities, but private entities such as developers are often required by public agencies to pay for the cost of EIR preparation); Goldman, 'Legal Adequacy of Environmental Discussions in Environmental Impact Reports,' 3 Journal of Environmental Law 1 (1982) ('CEQA requires every public agency to prepare and consider an EIR before its approval or disapproval of a project that may significantly affect the environment').

"8. *City of Poway* does not constitute contrary authority. There is no doubt that in *City of Poway* the EIR was prepared by the developer's consultant. 155 CA3 1037, 1040. There is also no doubt that this was *not* one of the reasons asserted for the invalidity of the project's approval. 155 CA3 1037, 1041. Plaintiff in *City of Poway* attacked the EIR approval on three grounds. None of those grounds was that the EIR had impermissibly been prepared by the developer's representative rather than the public agency. Obviously, an appellate ruling is not authority for a proposition which it did not consider.

"9. The stark and irreconcilable conflict of interest which exists if the developer's paid consultant prepares the EIR is manifest. Moreover, if a consultant in the business of conducting environmental studies knows that its continuing source of employment will be

developers desirous of obtaining approval of their projects, is there need to inquire where the consultant's interests lie? Clearly those interests will not lie in achieving unbiased, objective environmental analysis, or in revealing environmental dangers in the proposed development, but instead in achieving approval of the principal's project. It would require a level of conscious integrity and subconscious mental discipline rarely found to result in production of an objective EIR in such a circumstance. A report prepared in such a circumstance is more comparable to an advocate's brief than an impartial observer's opinion. If, on the other hand, a consultant is under contract to, and consequently owes allegiance to, and has a hope of future employment from, a public agency, it is expectable that the consultant will be more motivated to provide the public agency with comprehensive, unbiased environmental analysis. This is the apparent purpose of CEQA's requirement that, if the public agency does not prepare the EIR itself, the preparation be done under contract to the public agency. The statute is clear on this point; there is no contrary authority.

"10. If authority beyond the plain words of the statute is needed, the most nearly on point is *Sundstrom v. County of Mendocino*, 202 CA3 296, 307 (1988). The court in *Sundstrom* ruled that it was an impermissible delegation of the responsibility to assess environmental impact for the County of Mendocino to direct an applicant to conduct studies himself to determine whether unacceptable environmental impacts were involved. 'Under CEQA, the EIR or negative declaration must be prepared "directly by, or under contract to" the lead agency. (Pub. Resources Code, § 21082.1.)' ruled *Sundstrom* at 307. True, the County of Mendocino's attempted delegation in *Sundstrom* occurred at an early evaluation stage before an EIR was ordered, and did not involve a developer's preparation of his own EIR. However, respondent here indicates no rationale for more strenuous environmental protection during attempts to determine whether an EIR is necessary and more relaxed standards in later stages after determination that an EIR must be prepared because significant environmental impacts are likely. If anything, the rule might be the reverse. (*See, e.g.* the Guidelines allowance of a developer-prepared *draft* EIR, but not *final* EIR).

"11. If there is any doubt regarding whether a public agency may lawfully direct a developer to prepare his own EIR, it is dispelled by *Friends of Mammoth v. Board of Supervisors*, 8 C3 247, 259 (1972). In *Friends of Mammoth*, the Supreme Court ruled that CEQA is to be interpreted to achieve the maximum environmental protection that can be achieved within the reasonable scope of the statutory language. Here it is not merely well within the scope of the statutory language that the public agency, and not the applicant for the public agency's approval, bears the responsibility of conducting the environmental study; it is plainly stated in mandatory language. Clearly, a study conducted by a public agency charged with protection of the public interest and not in a position of conflict of interest is more likely to achieve the purposes of CEQA than a study conducted by paid consultant of the applicant. The point need not be belabored, but needs to be clearly in mind since it demonstrates the rationale for the wording of the statute. *Friends of Mammoth* and all the similar cases following *Friends of Mammoth* are further reason to find that respondent may not comply with CEQA by directing the applicant to conduct his own environmental study and to prepare his own EIR.

"12. This ruling is based upon the CEQA statute and guidelines, the corresponding case law, and general principles of conflict of interest. This ruling is not based upon any conclusion regarding the competence, integrity or motivations of the particular consultants hired by real party in interest in this particular case. The court is simply ruling that the hiring of a consultant by the applicant to conduct an environmental study and to prepare an EIR was not a permissible means of complying with CEQA.

"13. Counsel to confer on a return date.

"14. Petitioner to prepare judgment and order."